IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSE ROSILES-PEREZ, et al., | ) |
| Plaintiffs, | ) NO. 1:06-0006 |
| v. | ) JUDGE HAYNES |
| SUPERIOR FORESTRY SERVICE, INC., | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiffs,[1] Jose Rosiles-Perez, Jesus Santiago-Salmoran, and Andres Aldana-Moreno, filed this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 through 219 and the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. §§ 1801 through 1871 against the Defendants: Superior Forestry Service, Inc. ("SFSI"), Scott Burston, a SFSI official and William Ioup, SFSI's chief executive officer. In sum, Plaintiffs assert claims that the Defendants failed to provide and maintain complete information on the terms and conditions of the Plaintiffs' work as migrant workers as required by the AWPA and failed to pay Plaintiffs under the AWPA as well as the minimum wage and overtime wages required by the FLSA.

In earlier proceedings, on May 23, 2006, the Court granted the Plaintiffs' motion for an emergency protective order and entered a Protective Order that bars the Defendants, their employees and agents from among other things, retaliating against Plaintiffs and putative class members for their pursuit of this action. (Docket Entry Nos. 90 and 91). The Protective Order expressly required that upon its entry, the Defendants were to "immediately" inform all of its supervisory employees and "all other employees" of the contents of the Order, including the anti-retaliation provisions of

---

[1]Since the filing of the complaint, other plaintiffs have joined this action. (Docket Entry Nos. 19, 41, 42, 63, 64, 73, 103, 104, 149 and 152).

the AWPA and FLSA. (Docket Entry No. 91 Order at p. 2).

Before the Court is the Plaintiffs' motion for sanctions and a finding of contempt (Docket Entry No. 106), asserting that during discovery, Plaintiffs learned that the Defendants' supervisory personnel were not informed of the Court's protective order for over a month after its entry and that the notice that Defendants provided to its supervisors contains "just cause" provisions that are contrary to the FLSA and the Court's Order. Plaintiffs contend that this language would allow the Defendants' supervisors to take adverse or retaliatory actions against Plaintiffs and members of the purported class, if the Defendants' supervisors believed that Plaintiffs lacked "just cause" to file this action.

In response, the Defendants contend that they substantially complied with the Court's Order; that Plaintiffs lack clear and convincing evidence of the Defendants' noncompliance; that the Plaintiffs do not present any evidence of contumacious conduct by the Defendants or their agents; and that the "just cause" phrase is in the anti-retaliation provisions of the AWPA that is cited in the Court's Order.

## A. Findings of Fact

The controlling document on this motion is the Court's May 23, 2006 Protective Order that provides, in pertinent part, as follows:

> 1. Defendants and their employees, agents, including their attorneys, and intermediaries are hereby and immediately barred from all communications with plaintiffs and putative class members about this lawsuit, except as permitted through the formal discovery process, until further Order of this Court.
>
> "Employees" and "agents," as used above and in subsequent provisions of this Order, shall refer to defendants' current employees and agents, and all persons who have been employees or agents of defendants and over whom defendants might continue to exercise influence or control, notwithstanding whether such persons are

2

presently employed or engaged. For purposes of this Order, the seasonal nature of defendants' operations, and whether and to what extent an individuals is currently engaged in seasonal activities, are not relevant to a determination of whether such individual is an employee or agent of defendants.

2.      Defendants are hereby and immediately prohibited from directing, permitting, or undertaking, either directly or through any employee, agent, or other intermediary, activities that intimidate, threaten, restrain, coerce, or in any manner discriminate against plaintiffs, putative class members, witnesses, potential witnesses, or their family members, including the threatened or actual reporting of such persons for alleged immigration violations or other efforts to have them arrested, detained, jailed or deported from the United States.

* * *

4.      <u>Defendants shall immediately instruct supervisory employees and all other employees and agents</u> who might have contact with plaintiffs and putative class members of the prohibitions of this Order and the anti-retaliation provisions of the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §1801, and the Fair Labor Standards Act, 29 U.S.C. §201.

(Docket Entry No. 91 Order at pp. 1, 2). (emphasis added).

On June 16, 2006, during the first discovery deposition, Jesus Flores, a crew leader for the Defendants, testified that he was unaware of any orders or rulings of the Court in this action. (Docket Entry No. 106, Flores Deposition, Exhibit B thereto at p. 28). Flores was the crew leader who was cited as engaging in retaliatory conduct giving rise to Plaintiffs' motion for a protective order. (Docket Entry No. 80, Attachments 3 and 4). Jose and Joan Sanchez Martinez, filed declarations in this action about Flores's threats about this action that caused them to leave their residence. Id.. According to his affidavit, SFSI warned Flores prior to the May 23rd Order not to talk to Plaintiffs who are members of his crew. (Docket Entry No. 114, Gonzalez Affidavit at p. 2).

On June 16, 2006, Plaintiffs' counsel also deposed Enrique Gonzalez, Defendants' personnel manager after Gonzalez's return from Mexico. Gonzalez worked two days before his deposition and spoke to the Defendant Ioup, but was not informed of the May 23rd Order. Gonzalez first learned

3

of the Court's Order more than three weeks after its entry. At the time of his deposition, Gonzalez had not communicated the Court's Order to his crew leaders nor was Gonzalez aware of any SFSI official who did so.

In a June 23, 2006 letter, Defendants' counsel informed Plaintiffs' counsel that: "Immediately after we received the protective order in this matter, we forwarded the protective order to our client and instructed our client to inform its employees" and that "[i]n response to the protective order, Superior notified its supervisory employees ... that they were to have no communication with any plaintiffs...." (Docket Entry No. 106, Exhibit D thereto). According this letter, "in response to the protective order, Superior notified its supervisory employees including those crew leaders that it knew were aware of the pending lawsuit and instructed them they were to have no communication with any plaintiffs nor to threaten, harass, intimidate, or in any other way retaliate against anyone who had joined or might join this action." Id. This June 23rd letter reported that, "all thirty-five crew leaders" were notified of the Protective Order by telephone.

The record does not reflect the identity of any of the Defendants' employees or agents who made such telephone calls. The record reflects only that Gonzalez, SFSI's personnel manager made telephone calls to crew leaders, but Gonzalez's telephone calls were not completed until June 19, 2006. (Docket Entry No. 114, Gonzalez Affidavit at p. 3). During the week of June 19, 2006 SFSI sent written documents to its current and 2006 crew leaders as well as its former crew leaders for the past two years in which SFSI crew leaders would acknowledge their awareness of the contents of the May 23rd Order with their signatures. (Defendants' Exhibit 1). SFSI submitted these signed documents by its crew leaders that are dated between June 17, 2006 and August 15, 2006. Id. One acknowledgment date is May 20, 2006 that is three days before entry of the Order. Id. Thirty-five

4

(35) acknowledgments were signed after June 22, 2006. Id. Five acknowledgments were signed in July, 2006 and three were signed in August, 2006. Id.

Plaintiffs cite that following paragraph in each of these acknowledgments that Plaintiffs contends violates the FLSA.

> You may not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any migrant or seasonal agricultural worker because such worker has, <u>with just cause</u>, filed any complaint or instituted, or caused to be instituted, any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, or has served or is about to serve on an industry committee, or because of the exercise, <u>with just cause</u>, by such worker on behalf of others of any right or protection pertaining to wages, or otherwise to employment.

Plaintiffs' Exhibit 6 (emphasis added). Gonzalez does not take a favorable view of the action. (Plaintiffs' Exhibit 3, Gonzalez deposition at pp. 57-61).

## B. CONCLUSIONS OF LAW

"Under Federal Rule of Civil Procedure 37(b)(2)(C), a district court may sanction parties who fail to comply with its orders in a variety of way." Bass v. Josten, Inc., 71 F.3d 237, 241 (6th Cir. 1995)(citing Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990)). Rule 37(b)(2) provides in pertinent part: "If a party . . . failed to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: (C) An order striking out pleadings or parts thereof . . ." Fed. R. Civ. P. 37(b)(2).

"[A]ll orders and judgments of courts must be complied with promptly" and failure to do so can result in a finding of contempt. Maness v. Meyers, 419 U.S. 449, 458 (1975). The Supreme Court expressly recognized that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966). Contempt

5

actions in a strict legal sense are sui generis and are neither civil actions nor prosecutions. Walashek & Associates, Inc. v. Crow, 733 F.2d 51, 53 (7th Cir. 1984) (citing Myers v. United States, 264 U.S. 95 (1924)).

"'[A]lthough civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance.'" Redken Laboratories. Inc. V. Levin, 843 F.2d 226, 229 (6th Cir. 1988) (quoting TWM Mfg. Co., Inc. v. Dura Corp., 722 F.2d 1261, 1273 (6th Cir. 1983)). "The contemnor is not simply being punished for past behavior, but rather encouraged to shape its behavior to comply with the order based on the undesirability of suffering the sanction." United States v. Tennessee, 925 F. Supp. 1292, 1303 (W.D. Tenn. 1995).

The movant in a contempt proceeding must prove violations of the Court's Order by clear and convincing evidence. Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Electric Service Co., 340 F.3d 373, 379 (6th Cir. 2003). Yet, "[o]nce the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." Id. (emphasis in the original) In this regard, the Court must consider what, if any, reasonable steps were taken to comply with the Court's Order. Id.

For a finding of contempt, "'the facts found must constitute a plain violation of the decree so read.'" Cohn v. Kramer, 136 F.2d 293, 295-96 (6th Cir. 1943) (quoting Terminal R.R. Ass'n v. United States, 266 U.S. 17, 29 (1924). The offending party must have " violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." NLRB. v. Cincinnati Bronze, 829 F.2d 585 591 (6th Cir.

6

1987) (quoting SEC v. First Financial Group of Texas, Inc., 659 F.2d 660, 669 (5th Cir. 1981).

Violation of the Court's Order must be premised on the language of the Order. "'[U]nbroken lines of authority caution us to read court decrees to mean rather precisely what they say.' and ambiguities must be resolved in favor of persons charged with contempt." Grace v. Center for Auto Safety, 72 F.3d 1236, 1241 (6th Cir. 1996) (quoting NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990) (ellipsis in the original omitted). An order in a contempt proceeding the order must be "read in light of the issues and the purpose for which the suit was brought." Cohn, 136 F.2d at 295-96.

As a matter of fact and law, this Court's May 23rd Order extended not only to the Defendants, but also to SFSI's employees and agents. The Order expressly applied to "the Defendants, and their employees, agents" and "all persons who have been employees of the defendants and over whom defendants might continue to exercise influence or control." (Docket Entry No. 91, Order at p. 1). As a matter of law,

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance fo the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

Gary's Electric, 340 F.3d at 380 (quoting Wilson v. United States, 221 U.S. 361 (1911)).

Here, Plaintiffs made a prima facie showing that about month after the entry of the May 23rd Order, key SFSI personnel manager and crew leaders were unaware of the May 23rd Order, or its contents, including the crew leader whose conduct gave rise to the Order. The defendants' counsel's letter refers to unidentified SFSI officials who were sent the Order and informed "supervising employees of its contents." (Plaintiffs' Exhibit 4). Defendants did not offer evidence as to who made

7

those earlier calls to SFSI's crew leaders. Only Gonzalez, the SFSI's personnel manager who was out of the county for a time, testified that his telephone calls about the May 23rd Order that were concluded on June 19, 2006. Thirty-five (35) acknowledgments were mailed to crew leaders during the week of June 19th and many were signed after June 22, 2006. Five acknowledgments were signed in July, 2006 and three were signed in August, 2006.

The Count first finds that the Order required its contents to be provided to "all other employees," including supervisors. (Docket Entry No. 91 Order at p. 2). This language ensures that the protected employees are aware of the Order of protection so that the employees can also police the Defendants' compliance with the Order. The May 23rd Order was not distributed to all employees, as required by the express terms of the Order.

Second, there is not any evidence of which SDFSI official(s) actually informed SFSI supervisors and employees by telephone immediately after entry of the May 23rd Order. In a word, the unidentified SFSI official who assertdly made the telephone calls to crew leaders shortly after entry of the May 23 rd Order, did not submit an affidavit or testify that he or she did so.

Third, the dates of Gonzalez's telephone calls, the written acknowledgments and the timing of Flores' deposition lead the Court to find the serious compliance efforts required by the May 23rd Order, were not undertaken until after June 16, 2006. Upon consideration of all the circumstances, the Court finds at best, delayed compliance with the Court's May 23rd Order. The Order to SFSI was to give notice of its contents to its supervisors and "all other employees," "immediately." (Docket Entry No. 91 Order at p. 2).

The Plaintiffs' proof, however, fails to establish any actual retaliatory conduct by any SFSI official. Thus, the Court will reserve the issue of sanctions, until after provisions of the May 23rd

8

Order and the Order accompanying this Memorandum, are distributed to all employees and agents of the Defendants. Defendants shall provide to all of its employees a copy of the Order on this motion that allows any aggrieved employee to file an affidavit describing any retaliatory conduct. The Court will also await the completion of discovery to determine if any retaliation and violation of the May 23rd Order has occurred. At this time, the Court deems a sufficient sanction to be an award of attorney's fees and costs associated with their motion for contempt to the Plaintiffs.

As to the Defendants' "just cause" clause in the crew leaders' acknowledgments, "just cause" is in the anti-retaliation provision of the AWPA. 29 U.S.C. § 1855(a). Plaintiffs, however, are correct that the FLSA does not contain a comparable provision. Plaintiffs' concern is that the "just cause" clause may be use to justify retaliatory conduct by the Defendants' crew leaders. Given the view of Gonzalez, Defendants' personnel manager that this action is meritless and Flores's prior conduct, the Court deems Plaintiffs' belief to have some justification. Upon review of the file in this action the Court finds that "just cause" exists to file and maintain this action.

Given Plaintiffs' claims under the FSLA, the Court concludes that the retaliation provisions of the FSLA should control. The Defendants shall advise their crew leaders that the Court deems this action to be well founded and any retaliatory conduct by SFSI crew leader or agent against a plaintiff or putative class member will be addressed by the Court under the FSLA and the Court's May 23rd Order.

An appropriate Order is filed herewith.

**ENTERED** this the _31st_ day of January, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge

9