IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROSILES-PEREZ, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 1:06-0006 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| SUPERIOR FORESTRY SERVICE, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Plaintiffs Jose Rosiles-Perez, Jesus Santiago-Salmoran and Hector Ortiz-Mora individually[1], and on behalf of all others similarly situated, filed this action under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 et seq. ("AWPA") and its attendant regulation 20 C.F.R. § 500.72, and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA") against Defendants: Superior Forestry Service, Inc. ("SFSI"), Scott Barstow, an SFSI official and William Ioup, SFSI's chief executive officer. Plaintiffs are all foreign nationals mostly from Mexico, although some are from other parts of Central America. Plaintiffs entered this country under the H-2B temporary foreign worker visa program, for the purpose of employment with SFSI as agricultural workers. The gravamen of Plaintiffs' complaint is that through various methods and means, the Defendants took advantage of the Plaintiffs' indigence, inability to speak or understand English and ignorance of the laws of the United States, to underpay Plaintiffs and putative class members in violation of the FLSA and AWPA.

---

[1] Additional Plaintiffs joined this action since the filing of the complaint. See Docket Entry Nos. 19, 41, 42, 63, 64, 73, 103, 104, 149, 152, 157, 275, 281, 282, 283, 288, 291, 300, 301 and 302.

Before the Court is Plaintiffs' renewed motion for class certification[2] and to appoint counsel (Docket Entry No. 221), contending, in sum: (1) that the purported class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) that the representative parties will fairly and adequately protect the interests of the class; and (5) that class certification is appropriate under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Members of the putative class would include: "[a]ll non-supervisory workers admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) and who were employed by Defendants at any time from January 2000 to the present." Id. at 1.

In their response (Docket Entry No. 231), Defendants assert that Plaintiffs cannot satisfy the elements of class certification under Rules 23(a) and (b)(3). Defendants further assert that the action will be unmanageable as a class action and that if the Court does certify the class, the statute of limitations on claims should be no more than three (3) years. In addition, Defendants contend that if the court certifies the proposed class, the applicable statute of limitations for this action should be three years.[3] Defendants later filed a surreply (Docket Entry No. 298) insisting that: (1) the Court is required to delve into facts underlying Plaintiffs' claims to determine if class certification is appropriate; (2) class actions under 23(b)(3) particularly require delving into

---

[2] This motion relates only to Plaintiffs' claims brought under the Migrant and Seasonal Agricultural Worker Protection Act. This Court provisionally certified this action as a collective action under the Fair Labor Standards Act. (Docket Entry No. 205, Order of July 17, 2007).

[3] The Defendants refer to the arguments contained in their motion for a protective order limiting discovery (Docket Entry No. 111). As that motion is pending before the Court, the Court will address it in this Memorandum and rule accordingly.

2

the evidence to determine whether class issues predominate; (3) with regard to the MU and payment system, Plaintiffs can only create a smokescreen of disingenuous allegations of procedural misconduct and they lack any support for a finding of commonality; and (4) the class representatives lack knowledge of their own pay seriously undermines their credibility and adequacy as class representatives.

On October 22, 2007, the Court held a hearing. Both parties submitted post-hearing memoranda that are also before the Court. (Docket Entry Nos. 270 and 279). In their post-hearing memorandum, Plaintiffs assert that:

> *either* Rule 23(b)(2) certification of their claims for final injunctive relief, and Rule 23(b)(3) certification of all claims for money damages; *or, alternatively,* Rule 23(b)(2) certification of their claims for injunctive relief and monetary relief that is incidental to the final injunction and (b)(3) certification of their claims for monetary damages that are not incidental to the injunction[,]

is appropriate. (Docket Entry No. 270 at 2) (emphasis supplied). Defendants insist that Plaintiffs are attempting to broaden their initial claims to encompass a larger class[4] and to include a request for 23(b)(2) certification in an amended complaint filed nearly two years after the commencement of this action.[5]

For the reasons stated below, the Court concludes that Plaintiffs' have met the

---

[4] In their amended complaint, Plaintiffs define the putative class as "all workers admitted as temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by the Defendants in their forestry operations at any time from January 2000 through the present." (Docket Entry No. 296, Amended Complaint at ¶ 34). Yet, Plaintiffs failed to demonstrate that supervisory workers were treated in the same way as other members of the putative class. Thus, the Court will decide this motion based on the original class definition, of non-supervisory workers.

[5] The Court has granted Plaintiffs' motion to file an amended complaint in a separate Order. (Docket Entry No. 295).

3

prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure. Because Plaintiffs seek primarily injunctive and declaratory relief related to SFSI's recording practices and payment methods, the Court concludes class certification is proper under Rule 23(b)(3). Further, the Court appoints counsel of record for Plaintiffs to represent the interests of the class. Accordingly, the Court concludes that Plaintiffs' motion for class certification and appointment of counsel should be granted.

## A. ANALYSIS OF THE MOTION

### 1. SFSI's Business

SFSI is primarily engaged in reforestation or replanting of trees. (Docket Entry No. 231, Exhibit R thereto, Ioup Declaration at ¶ 2). From November through March (the growing season), SFSI employees plant hundreds of thousands of trees throughout the United States. Id. SFSI hires seasonal workers to meet its employment needs. Id. at ¶ 3. Due to the unavailability of domestic seasonal workers, SFSI hires foreign workers and obtains H2-B visas to allow these individuals to work in the United States. Id.

Obtaining H2-B visas requires that an employer certify to the Department of Labor ("DOL") that qualified workers are unavailable in the United States. Id. at ¶ 4. To make this certification, employers must advertise available positions to U.S. workers and file disclosure papers with the DOL, including a description of the job to be filled and the rate of pay. Id. at ¶ 5. SFSI's disclosure included a statement that the worker will be responsible for any expenses associated with the visas and transportation necessary to work for the company. Id. After certifying the unavailability of U.S. workers, SFSI certified that foreign workers' employment will not adversely affect wages and working conditions of similarly employed U.S. workers, a

4

certification required under the H2-B program. Id. at ¶ 4.

SFSI uses a recruiter in Mexico to locate individuals willing to come to the United States to work. Id. at ¶ 6. The recruiter interviews interested persons in Mexico and creates a list of potential workers based on SFSI's employment needs. Id. Once created, the list is sent from Mexico to human resource personnel in Arkansas to complete the visa paperwork. Id. When the appropriate paperwork and application materials are in order, H2-B1-129 Petitions are filed with the U.S. Citizenship and Immigration Services ("USCIS") for permission to apply for visas for specific workers. Id. at ¶ 5. After the paperwork is complete and submitted to and accepted by the DOL and USCIS, these documents are forwarded to the Consulate in Monterrey, Mexico, where candidates will be interviewed to determine if they will be granted visas. Id. If approved, the candidates pick up their visas. Id. Those visas are used to bring SFSI approved workers from Mexico to the United States for temporary work. Id.

From 2003-2005, there was a $100 fee for processing the visa application, regardless of whether it was obtained, and the visa itself cost an additional $100. Id. at ¶ 8. According to SFSI, after a worker is selected, but before he/she arrives in the U.S. he/she is given an opportunity to read SFSI's disclosure statement explaining the terms of employment and notifies the individual in Spanish that he/she must bear transportation and visa expenses. Id. at ¶ 7.

Once visas are obtained, the workers must travel from Mexico to the United States to begin employment. The same human resource personnel who complete the visa paperwork are responsible for arranging and coordinating the transportation of individuals from Monterrey to Arkansas. Id. at ¶ 6. New workers were usually asked to travel to Oaxaca, Mexico to receive disclosures and learn about the job before traveling to Monterrey for their Consulate interview.

5

Id. at ¶ 7. Some returning workers may have gone to Oaxaca as well. Id. SFSI also arranges for transportation to take workers from Oaxaca to Monterrey. Id. at ¶ 9. Each worker pays his/her fare to the bus company for this service. Id. SFSI estimates that for the relevant time period, approximately 60% of its workforce consisted of returning employees. Id. at ¶ 7.

Once a worker obtains his/her H2-B visa, he/she travels from Monterrey to Arkansas via bus. Id. at ¶ 10. SFSI arranges the transportation that is billed at a flat rate per bus. Id. From 2003-2005, the trip cost for an individual worker was approximately $60. Id. If a worker traveled from Oaxaca to Arkansas, through Monterrey, he/she paid $120 in 2003 or $128 in 2004 and 2005. Id. All workers paid the $6 boarder crossing fee. Id.

Upon arrival in the United States, workers are divided into crews of approximately 15-18 individuals, and one crew leader to supervise each crew. (Docket Entry No. 231, Ioup Declaration at ¶ 9). The crew leader is responsible for completing paper work and detailing each crew member's work activity, such as hours worked and production figures. (Docket Entry No. 226, Exhibit 6 thereto, Deposition of Manuel Morales at pp. 90-103).

### 2. Class Claims

Members of the proposed class include SFSI's former employees from January 2000 through January 2006 who were brought to work in the United States under the H-2B temporary foreign worker visa program. Nearly all putative class members are non-English speaking foreign nationals with little to no understanding of their legal rights as guest employees in the United States. Plaintiffs assert claims on behalf of themselves and those similarly situated workers who Defendants "took full advantage of"due to "other class members' indigence, inability to speak or understand English, and their lack of understanding of the laws of the United

6

States to grossly underpay the named Plaintiffs and other class members." (Docket Entry No. 296, Amended Complaint at ¶ 3). Plaintiffs and putative class members seek to certify the claims in Count I of their AWPA claims asserting that: (1) SFSI maintained inaccurate and insufficient documentation relating to Plaintiffs' and potential class members' wage and payroll information in violation of § 1821(d); (2) SFSI provided false and misleading information to workers about their wage and other terms of their employment in violation of §1821(e); (3) SFSI failed to pay all wages when due in violation of § 1822(a); and (4) SFSI breached the parties' working arrangement in violation of § 1822(c).

## B. CONCLUSIONS OF LAW

Class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which optimum results might be more than consumed by the cost." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 n. 11 (1981) (quoting Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 (1980)). A class action concentrates the litigation in one forum and avoids inconsistent adjudications, thereby advancing "the efficiency and economy of litigation which is a principal purpose of the procedure." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974). Any judgment in such an action operates a res judicata against the claims of any other class member. Duncan v. State of Tenn., 84 F.R.D. 21, 27 (M.D. Tenn. 1979).

To fulfill the requirements for class certification, Plaintiffs must first show compliance with Rule 23(a) of the Federal Rules of Civil Procedure that applies to all class actions. Once Plaintiffs have met this requirement, Plaintiffs must show that class certification is proper under one of the subdivisions of Rule 23(b). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621 (1997). "In determining the propriety of a class action, the question is not whether the plaintiff

7

or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir.1971)). It is the Plaintiffs' burden "to show the Court that the requirements of Rule 23 are met." Duncan v. State of Tenn., 84 F.R.D. 21, 27 (M.D. Tenn. 1979). Mere recitation of the statutory language contained in Rule 23 will not satisfy the requirements of these rules. Sims v. Parke Davis Co., 334 F.Supp. 774 (E.D. Mich. 1971), aff'd 453 F.2d 1259 (6th Cir.1971).

Plaintiffs bear the burden of persuasion that "[a]s a preliminary matter [the plaintiff can] satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class [they] seek[] to represent falls within one of the subcategories under Rule 23(b)." Steelman v. Strickland, 78 F.R.D. 187, 189 (E.D. Tenn. 1977) (Neese, D.J.) (quoting Senter v. Gen. Motors Corp., 532 F.2d 511, 522 (6th Cir.1976)). This burden is not by a preponderance of the evidence, as that standard applies only to proving the existence of the class at the time of trial. See Paxton v. Union Nat'l Bank, 519 F. Supp. 136, 37, 171 (E.D. Ark. 1981), rev'd in part on other grounds, 688 F.2d 552 (8th Cir.1982). In determining the appropriateness of class certification, a court should accept the complaint's allegations as true. See Reeb v. Ohio Dep't of Rehab. & Corr., 81 Fed. Appx. 550, 555 (6th Cir. 2003).

In reaching a determination on class certification, preliminary hearings on the merits are disfavored. Eisen, 417 U.S. at 177-78; Duncan, 84 F.R.D. at 28. The Supreme Court, however, counsels that in determining class action issues, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe

8

behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982) (emphasis added). A limited factual inquiry into the class allegations, including the deposition of the named plaintiff, is appropriate for actions involving complex claims. See, e.g., Kirkpatrick v. J.C. Bradford, 827 F.2d 718, 723 (11th Cir.1987) (securities action).

Here, the parties submitted discovery responses, affidavits and excerpts of depositions. Given the scope of the proposed class, the Court deems a limited factual analysis necessary, but does not attempt to resolve factual disputes given the Supreme Court's warning in Eisen. At this point, the Court's duty is to determine only if there is a sufficient factual showing to support the class sought to be certified.

### 1. Rule 23(a) Prerequisites

Rule 23(a) sets forth four prerequisites that must be met for maintenance of a class action suit. To maintain a class action, Plaintiffs must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The Supreme Court requires that a district court engage in a "rigorous analysis" of whether the Rule 23 prerequisites are met before certifying a class. In re Am. Med. Sys., Inc., 75 F.3d at 1078 (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). The district court has broad discretion in deciding to certify a class, but it must apply the Rule 23 framework. Id. (citing Gulf Oil Co., 452 U.S. at 100)).

9

### a. Numerosity

To meet the first requirement of class certification under Rule 23(a), Plaintiffs must

demonstrate that the putative class "is so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a).

> There is no strict numerical test for determining impracticability of joinder.
> Senter, 532 F.2d at 523 n. 24 (and citations therein). Rather, "[t]he numerosity
> requirement requires examination of the specific facts of each case and imposes
> no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct.
> 1698, 1706, 64 L.Ed.2d 319 (1980). When class size reaches substantial
> proportions, however, the impracticability requirement is usually satisfied by the
> numbers alone. 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions,
> § 3.01, at 3-4 (3d ed. 1992)

In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir.1996).

Here, Plaintiffs contend that the proposed class is comprised of approximately 3,000 H-

2B guest workers. (Docket Entry No. 225, Willenson Declaration at ¶ 11)[6]. That number alone

favors a finding of impracticability of joinder. Although Defendants do not contest this

calculation, they assert that "[s]ince discovery has shown that the Plaintiffs' class-wide

allegations are not supported by the facts, the actual number of potential class members with

valid claims is likely very small, since employees properly paid would not be members of a class

who would be appropriately included in the proposed class." (Docket Entry No. 231,

---

[6] Plaintiffs arrived at this number as follows:

the original payroll tables produced by defendants...have 2300 records... these tables did
not include data after February 18, 2006. Defendants subsequently produced additional
data...There are 612 records in an employee data table included in that additional
production. The extent of overlap... is not yet known, but ...neither production included
data for the 06-07 season, when hundreds more H-2B workers were employed. It seems
reasonable..that there are approximately 3000 workers in the potential class.

(Docket Entry No. 225, Willenson Declaration at ¶ 11).

Defendant's Opposition to Plaintiff's Renewed Motion for Class Certification at p. 31). In

support of this contention, Defendants point to the depositions of Rosiles-Perez and Santiago-

Salmoran that, Defendants allege, contradict information contained in their affidavits. According

to Defendants, both men say in their affidavits that they discussed certain employment concerns

with many other people from different crews who shared similar experiences, yet in their

depositions, were unable to identify these other workers by name.[7]

The Court concludes that a contradiction does not exist because a deponent cannot recall

a person by their proper name. It does not follow that failure to remember specific names renders

those named Plaintiffs' statements "without any real basis in fact" as the Defendants assert. Thus,

the Court concludes that the depositions of Plaintiffs Rosiles-Perez and Santiago-Salmoran

cannot defeat a finding numerosity. This Court declines to decide credibility issues in the

context of a class certification determination.

In Saur v. Snappy Apple, 203 F.R.D. 281 (W.D. Mich. 2001), an AWPA action

involving migrant workers, the district court found impracticability of joinder based on the

following factors:

> (1) the class members are migrants and are likely to be geographically dispersed;
> (2) the class members are, in large part, not native English speakers and will have
> difficulty in understanding English and utilizing court systems in the United States
> of America; (3) the class members are likely to lack financial resources; and (4)
> the size of an individual statutory claim under the AWPA, $500 per violation,
> makes it such that individuals are unlikely to seek to vindicate their rights on an
> individual basis.

Id. at 286-87 (citations and footnote omitted). This Court agrees. The same factors favoring

---

[7] The Court points out that the portions of the Rosiles-Perez deposition Defendants cite
do not refer to any conversations Rosiles-Perez had with other workers regarding terms and/or
conditions of employment.

11

numerosity in <u>Saur</u> are present in this action involving approximately 3,000 individuals. Thus, the Court concludes that Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### b. Commonality

To satisfy the second requirement of Rule 23(a), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is interdependent with the impracticability of joinder requirement, and the 'tests together form the underlying conceptual basis supporting class actions.'" <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d at 1080 (quoting 1 <u>Newberg</u>, <u>supra</u> at § 3.10, at 3-47).

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they turn on questions of law applicable in the same manner to each member of the class."

<u>Id.</u> The commonality test requires only a single issue common to all class members. 1 <u>Newberg</u> <u>supra</u> at § 3.10. A class meets the commonality requirement even if questions peculiar to individual class members remain after a determination of defendant's liability. <u>Sterling v. Velsicol Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th Cir.1988).

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. <u>American Med. Sys.</u>, 75 F.3d at 1080. It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

<u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 397 (6th Cir. 1998). "[W]here the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality." <u>Saur v. Snappy Apple</u>, 203 F.R.D.

12

281, 287 (W.D. Mich. 2001). Once commonality is established, "differences in the amounts of damages sustained by class members will usually not defeat certification...However, there must be a workable system for determining damages for class members if claims for monetary damages are to proceed." Id. (citations omitted).

Here, Plaintiffs assert that the common claims are:

a. Whether Defendants failed to provide Plaintiffs and other class members complete and accurate written wage statements with all of the required information, in violation of AWPA, 29 U.S.C. § 1821(d)(2);

b. Whether Defendants failed to maintain complete and accurate records of the hours worked, trees planted and wages earned by Plaintiffs and other class members, in violation of AWPA, 29 U.S.C. § 1821(d)(1);

c. Whether the transportation, visas and other expenses incurred by Plaintiffs and other class members in order to work for Defendants were primarily for Defendants' benefit;

d. Whether the *de facto* deductions from Plaintiffs' and other class members' wages for their transportation, visas and other expenses violated the prevailing wage requirements of the H-2B guest worker program and AWPA's wage payment and working arrangement provisions, 29 U.S.C. § 1822(a) and (c);

e. Whether Defendants' uniform wage payment system violated the parties' working arrangement, and AWPA 29 U.S.C. § 1822(c), by creating an illusion of a production bonus when there was practically none;

f. Whether Defendants' violations of AWPA were "intentional" within the meaning of the statute, 29 U.S.C. § 1854(c).

(Docket Entry No. 229, Memorandum in Support of Renewed Motion for Class Certification at p. 12).

Essentially, these claims can be condensed into three categories: (1) the de facto wage

13

reduction; (2) the MU[8] payment system; and (3) pay stub violations of failure to itemize deductions and false and misleading information. (Docket Entry No. 274, Transcript of Hearing on 10/22/2007 at 5). According to Plaintiffs, these are class-wide claims based on common evidence, subject to a class-wide defense. Id. The Defendants insist that Plaintiffs cannot meet their burden of establishing commonality. The Court agrees with Plaintiffs.

At this stage in the proceeding, the Court must determine whether commonality exists without making a determination of the merits of Plaintiffs' claims.[9] As an initial matter, Plaintiffs and the proposed class share the common fact of having performed seasonal work for SFSI on H-2B visas, and all members of the proposed class required international travel to begin their employment. Further, there are common questions of law and fact arising from SFSI's alleged failure to pay the Plaintiffs and putative class members all wages when due, SFSI's alleged failure to reimburse and/or pay workers' travel costs, SFSI's alleged failure to maintain accurate records and wage statements. To the extend any violation exists, the Court can create subclasses.

As to the contention that Defendants did not provide Plaintiffs and putative class members with complete and accurate wage statements, that issue would be resolved with common proof, as all of the wage statements are created with the same computer software. Even

---

[8] "The number designated 'MU' [] correlates to the number of properly planted trees in one thousand unit increments that is being credited to the worker that week." (Docket Entry No. 231, Defendant's Response at p.13.

[9] As the Court has previously informed the parties, subclasses consisting of each crew, or groupings of similarly situated crews may be appropriate in this action. Thus, to the extent that there may be differences amongst the various crews, as Defendants allege, certifying subclasses would remedy those concerns. See Docket Entry No. 274, Trans. of 10/22/2007 at pp. 14, 20.

14

if the numbers vary from wage statement to wage statement, the categories of information contained on a given wage statement would be the same. As to whether the Defendant maintained accurate records of hours worked, trees planted, and wages earned, those numbers were calculated using the same formula. For example, according to Defendants, "trees planted" is determined by "(1) the customer's designated onsite representative after he inspects the planting; and (2) the terms of the contract governing each tract of land planted in that week." (Docket Entry No. 231, Defendants' Opposition to Plaintiffs' Renewed Motion at p. 13). While this figure may differ from crew to crew or tract to tract, the way in which Defendants arrived at the "trees planted" number remains the same. Defendants also state that arriving at the "piece rate" for "trees planted" is "very complicated" and "specific to each tract of land planted." Id. at n. 5.

  To be sure, the Defendants submitted an explanation of these "very complicated" calculations, and used one crew leader's tabulations as an example.[10] See Docket Entry No. 231, Exhibit HH thereto. The Court finds the methodologies to be the same for all tree planting Plaintiffs; while the actual numbers may differ from crew to crew, the way in which the number was calculated is the same. Thus, this is another incident of commonality among members of the class, requiring common proof. These examples of common issues among the putative class are sufficient to satisfy commonality test that requires a single issue common to all class members. 1 Newberg supra at § 3.10. Thus, the Court concludes that Plaintiffs have met their burden of establishing commonality and need not analyze the other alleged common issues.

---

[10] The Court notes that this example is for the week beginning 02/03/2007. This example differs from the charts offered by Plaintiff for the week beginning 01/21/2006. Compare Docket Entry No. 231, Exhibit HH thereto at p. 11 with Docket Entry No. 214, Exhibit 1 thereto at p. 2.

15

### c. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In the Sixth Circuit, to satisfy typicality, the plaintiff "must be a member of the class he claims to represent . . . [or s]tated another way, the plaintiff must have standing to represent the class." Reid v. White Motor Corp., 886 F.2d 1462, 1471 (6th Cir. 1989).

Typicality limits the class claims to those fairly encompassed by the named plaintiffs' claims. General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). See also Senter, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). A necessary consequence of the typicality requirement is that the representative's interests must align with those of the represented group, and in pursuing his own claims, the named plaintiff will advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75.

In In re Am. Med. Sys., the Sixth Circuit stated:

> Typicality determines whether a sufficient relationship exists between the injury
> to the named plaintiff and the conduct affecting the class, so that the court may
> properly attribute a collective nature to the challenged conduct. In other words,
> when such a relationship is shown, a plaintiff's injury arises from or is directly
> related to a wrong to a class, and that wrong includes the wrong to the plaintiff.
> Thus, a plaintiff's claim is typical if it arises from the same event or practice or
> course of conduct that gives rise to the claims of other class members, and if his
> or her claims are based on the same legal theory.

75 F.3d at 1082 (quoting 1 Newberg, supra, § 3-13, at 3-76 (footnote omitted)). Further,

> [t]he typicality requirement, so explained, tends to merge with the commonality
> requirement. Falcon, 457 U.S. at 158 n. 13. Nevertheless, it is a separate inquiry
> and in particular focuses attention on differences between class representative

16

claims and class claims which would defeat the representative nature of the class action. <u>Fuller v. Fruehauf Trailer Corp.</u>, 168 F.R.D. 588, 598 (E.D.Mich.1996).

<u>Saur</u>, 203 F.R.D. at 288.

Here, Defendants argue that Plaintiffs have not met their burden of showing that the claims of the class representatives are typical of the class. Specifically, Defendants allege that because the named Plaintiffs "worked different hours, perform[ed] different activities (some for which they were compensated on a piece rate basis and some that were paid hourly), in different localities where there were different prevailing wage rates, under different supervisors, and during different seasons" that their claims cannot fairly represent those of the class. (Docket Entry No. 231, Defendant's Opposition at pp. 29-30). Defendants note that this action is analogous to <u>Harper v. Lovett's Buffet</u>, 185 F.R.D. 358, 364 (M.D. Ala. 1999).[11] The Court disagrees. Defendants explain that in <u>Harper</u>, "[t]he Court rejected the plaintiffs' demand to certify a broader class because all of the named plaintiffs had been employed only in a single facility, and during discovery they failed to present evidence that the practices they complained of occurred at any other restaurants." (Docket Entry No. 231, Defendants' Opposition at p. 30). To be sure, the <u>Harper</u> plaintiffs submitted 15 affidavits of hourly employees who all worked at the same restaurant. Thus, that court concluded that the class could be provisionally certified only for employees at that restaurant location because plaintiffs did not show that they were "similarly situated" to potential plaintiffs at other restaurant locations.

In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims "arises

---

[11] The Court notes <u>Harper</u> involved the FLSA, not the AWPA. In <u>Harper</u>, the "first and dispositive question" was "whether the original Plaintiffs and the potential opt-in plaintiffs are similarly situated" for the purposes of provisional class certification.

from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re Am. Med. Sys., 75 F.3d at 1082 (emphasis added). Here, the named Plaintiffs, Jose Rosiles-Perez, Jesus Santiago-Salmoran and Hector Ortiz Mora, worked for SFSI for a substantial period of time, collectively encompassing the time span of the proposed class. Further, each named Plaintiff worked planting trees and spraying herbicides under several different supervisors and in many different states. In addition, the proof of each named Plaintiff supports the class claims. (Docket Entry No. 231, Exhibit T thereto, Affidavit of Rosiles-Perez at ¶¶ 5,-8, 12-16; Id. at Exhibit U thereto, Affidavit of Santiago-Salmoran at ¶¶ 5-8, 14-16, 18-19; Id. at Exhibit Z thereto, Deposition of Hector Ortiz-Mora at pp. 25; Id. at Exhibit GG thereto, Ortiz-Mora Check History). Each named Plaintiff attests to the fact that other SFSI workers shared similar experiences. See Docket Entry No. 231 at Exhibits T, U, Z.

Rosiles-Perez worked with SFSI each planting season from the 1997-1998 season until the 2004-2005 season, except he did not work the 2000-2001 season. (Docket Entry No. 231, Exhibit T thereto, Affidavit of Rosiles-Perez at ¶ 3). From 2001-2005, Rosiles-Perez worked on a crew that Francisco Carretero supervised and in at least seven states. Id. at ¶ 10. During his time at SFSI, Rosiles-Perez planted pines and sprayed herbicides. Id. at ¶ 3.

Santiago-Salmoran worked for SFSI from the 1999-2000 planting season until the 2003-2004 season. (Docket Entry No. 231 at Exhibit U thereto, Affidavit of Santiago-Salmoran at ¶ 3). Santiago-Salmoran worked in both planting and herbicide spraying. Id. While employed with SFSI, Santiago-Salmoran worked under crew leaders Pedro Gonzalez, Hipólito Feliciano and Eusebio Ramírez and in seven different states. Id. at ¶ 12.

18

Ortiz-Mora's check history shows that he worked with SFSI from the 2000-2001 planting season until the 2004-2005 season. (Docket Entry No. 231 at Exhibit GG thereto, Ortiz-Mora Check History). During his tenure at SFSI, Ortiz-Mora worked in both planting and spraying in at least thirteen states. Id.; Id. at Exhibit Z thereto at p. 25.

The Court concludes that the claims of the named Plaintiffs are typical of those of the class. Thus, Plaintiffs have satisfied a showing of typicality under Fed. R. Civ. P. 23(a)(3).

### d. Adequacy

Rule 23(a) demands that the named representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. Hansberry v. Lee, 311 U.S. 32 (1940); 1 Newberg, § 3.21, at 408. See also Smith v. Babcock, 19 F.3d 257, 264 n. 13 (6th Cir.1994)("[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard").

Trollinger v. Tyson Foods, Inc., 4:02-CV-23, 2006 U.S. Dist. Lexis 74114 at *22-23 (E.D. Tenn. Oct. 10, 2006).

Inquiry into the adequacy elements requires the Court to consider whether "1) the representative[s] [have] common interests with unnamed members of the class, and 2) it [] appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re Am. Med. Sys, Inc., 75 F.3d at 21 (quoting Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.1976)) (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"); Falcon, 457 U.S. at 157 n. 13

19

("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest")). In Falcon, the Supreme Court reiterated its core requirement that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." 457 U.S. at 156 (citations and quotation omitted). Absolute identity of claims among class members, however, is not required, Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), particularly as to the amount of damages. Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200-01 (6th Cir. 1974). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. Id. at 157 n. 13.

Defendants contend that named Plaintiffs are not adequate representatives for the class because their depositions contradict the class claims. Specifically, Defendants assert that while the Rosiles-Perez affidavit alleges improper check stubs and understated hours, in his deposition, Rosiles-Perez admitted that he never questioned SFSI on his stated hours or its methods of calculating hours. The Court finds this argument unpersuasive. Although Rosiles-Perez did not question his supervisor regarding his hours, Rosiles-Perez surmised that SFSI's methods were questionable because he and his tree planting crew members were credited with different hours worked[12], despite the fact that they all arrived at the tract at the same time and worked together, side-by-side all day long. (Docket Entry No. 231, Exhibit X thereto, Rosiles-Perez Deposition at

---

[12] The Court notes that an hourly sheet from Francisco Carretero's crew, which named Plaintiff Rosiles-Perez was a member, had a variance of fifteen hours worked between the individual with the most hours and the individuals with the least hours. This supports Rosiles-Perez's claim that even though members of the same crew arrived together, worked together and left together, some members were credited with many more hours than others. (Docket Entry No. 226, Exhibit 2 thereto, Carretero Crew Sheets at p. 6).

20

p. 61; Docket Entry No. 231, Exhibit T thereto, Rosiles-Perez Affidavit at ¶ 15). The Court finds that the Rosiles-Perez deposition supports the class claims.[13]

Defendants also insist that Santiago-Salmoran is an inadequate class representative because he had "no knowledge about how the hours worked was calculated, or how the company recorded his time." (Docket Entry No. 231 at p. 34). The Court finds this argument unpersuasive as well. The Court does not find it necessary that a named Plaintiff know how his wages were calculated and his hours recorded, rather, it is sufficient that he alleges that the wages and hours were inaccurately calculated and recorded.

Here, Rosiles-Perez, Santiago-Salmoran and Hector Ortiz-Mora have common interests with the unnamed member of the class and have shown that they will vigorously prosecute the interests of the class through qualified counsel. The named Plaintiffs have a common interest with the putative class in that they are seeking injunctive relief and compensation for alleged injury SFSI caused when engaging in various employment practices Plaintiffs deem to be

_____

[13] Defendants insist that Rosiles-Perez is an inappropriate class representative because in his affidavit, Rosiles-Perez affied that SFSI failed to make adequate disclosures concerning the terms and conditions of employment (Docket Entry No. 231, Exhibit T thereto, Rosiles-Perez Affidavit at ¶ 7), yet, in his deposition, Rosiles-Perez testified "that he did not remember whether he was given information or not." (Docket Entry No. 231 at p. 34). The Court notes that the various pages of the Rosiles-Perez deposition cited to are not included in their excerpted version at Docket Entry No. 231, Exhibit X thereto. Specifically, Defendants' Exhibit X does not contain pages 23, 24 or 25, upon which Defendants rely in this argument. Further, Defendants argue that Rosiles-Perez's affidavit states that "Defendants did not provide adequate and accurate disclosures of information regarding the work and its details to the Plaintiffs" (Docket Entry No. 231 at p. 34), but that his deposition admits that he did not know what this paragraph meant. (Docket Entry No. 231, Exhibit X thereto, Rosiles-Perez Deposition at pp. 94-95). The Court also finds this unpersuasive. The deposition indicates that Rosiles-Perez was confused by counsel's questions, and required a clarification in "plainer language", but the answer to that question, which would have been on the following page of the deposition was not included in the excerpted version supplied to the Court. Id. at p. 95.

21

violations of the AWPA.  Additionally, the interests of the named Plaintiffs are not antagonistic

to those of the proposed class members.

As noted above, the second <u>Senter</u> criterion requires the Court to determine that

plaintiffs' counsel will "vigorously prosecute the interests of the class."  In fact, the Sixth Circuit

"explained that it 'reviews the adequacy of class representation to determine whether class

counsel are qualified, experienced and generally able to conduct the litigation, and to consider

whether the class members have interests that are not antagonistic to one another.'" <u>Beattie v.

CenturyTel, Inc.</u>,511 F.3d 554, 562-63 (6th Cir. 2007) (quoting <u>Stout v. J.D. Byder</u>, 228 F.3d

709, 717 (6th Cir. 2000)).  Thus, for adequacy determinations, the emphasis is on the

representation provided by class counsel.   Here, Plaintiffs are represented by attorneys from: the

Southern Poverty Law Center[14]; Farmworker Justice[15]; the Virginia Justice Center for Farm and

Immigrant Workers; the Legal Aid Justice Center[16]; and, the law firms of Hughes, Socol, Piers,

Resnick & Dum, Ltd and Bell, Tennent & Frogge, PLLC.  From the prior proceedings in this

action, the Court observes that these attorneys are committed to the vindication of migrant

---

[14] The Southern Poverty Law Center's Immigrant Justice Project concentrates on "the unique legal needs of migrant workers, a group particularly vulnerable to workplace abuse." http://www.splcenter.org/legal/ijp.jsp *accessed on* January 30, 2008.  The Immigrant Justice Project attempts to "litigate cases that can result in systemic, industry-wide change." <u>Id.</u>

[15] "Farmworker Justice is a nonprofit organization that seeks to empower migrant and seasonal farm workers to improve their living and working conditions, immigration status, health, occupational safety, and access to justice." http://www.fwjustice.org/WhoAreWeDir/WhoAreWe.htm *accessed on* January 30, 2008.

[16] "The Legal Aid Justice Center's Immigrant Advocacy Program (formerly the Virginia Justice Center for Farm and Immigrant Workers) supports low-wage immigrant workers throughout the Commonwealth in their efforts to find justice and fair treatment in the workplace." http://www.justice4all.org/our_programs/vjc *accessed on* January 30, 2008.

22

workers' rights. These counsel have participated in numerous class action lawsuits for migrant

workers and bring a wealth of experience and knowledge of issues affecting migrant agricultural

workers. Thus, the Court concludes these attorneys will vigorously prosecute the interests of the

putative class.

The Court concludes that Plaintiffs have met their burden of demonstrating numerosity,

commonality, typicality and adequacy. Now, the Court must determine whether Fed. R. Civ. P.

23(b) applies to this action, thus making class certification appropriate.

### 2. Rule 23(b)

Once plaintiffs have demonstrated that they meet all of the conjunctive requirements of

Rule 23(a), they must show that their action falls into one of the subdivisions of Rule 23(b). In

addition to the 23(a) requirements, Plaintiffs must show:

> (2) the party opposing the class has acted or refused to act on grounds that apply
> generally to the class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the
> > prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the
> > controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation
> > of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)-(3).

Rule 23(b)(2) "is intended to reach situations where a party has taken or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23 Advisory Committee's Note. Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Id.

Here, Plaintiffs seek:

> to be certified pursuant to Rule 23(b)(2) and (b)(3), [] restitution of unpaid wages, an award of money damages and/or statutory damages, declaratory relief, and injunctive relief to make them whole for damages they suffered, and continue to suffer, due to the Defendants' violations of law, and to ensure that they and other H-2B (and returning H-2B) workers will not be subjected by the Defendants to such illegal conduct in the future.

(Docket Entry No. 296, Amended Complaint at ¶ 4).

During the October 22, 2007 hearing, the Court inquired whether given their contentions, certification of the AWPA action should be under Rule 23(b)(2) as opposed to Rule 23(b)(3). On November 21, 2007, Plaintiffs filed a Post-Hearing Brief on Rule 23(b)(2) class certification and proposes options for certification:

> *either*, Rule 23(b)(2) certification of their claims for final injunctive relief, and Rule 23(b)(3) certification of all claims for monetary damages; *or, alternatively*, Rule 23(b)(2) certification of their claims for injunctive relief and monetary relief that is incidental to the final injunction, and (b)(3) certification of their claims for monetary damages that are not incidental to the injunction (for example, their unpaid back wages from off-the-clock work, resulting from Defendants' unlawful timekeeping policies and/or practices).

(Docket Entry No. 270, Post-Hearing Brief at p. 2) (emphasis supplied).

Defendants insist that Plaintiffs cannot meet the requirements for class certification under

Fed. R. Civ. P. 23(b) because questions of law or fact common to class members do not predominate over any questions affecting only individual members. Under either of Plaintiffs' theories, the Court must decide whether Rule 23(b)(2) can be appropriately applied.

### a. Rule 23(b)(2)

In actions where Plaintiffs seek monetary relief as well as injunctive and declaratory relief, Plaintiffs must show that the requested injunctive and declaratory relief predominates over any claims for monetary relief. Reeb v. Ohio Dept. of Rehabilitation and Correction, 435 F.3d 639, 647 (6th Cir.2006) (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir.1998). "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998). "In determining whether injunctive relief predominates in a Rule 23(b)(2) class, one critical factor is whether the compensatory relief requested requires individualized damages determination or is susceptible to calculation on a classwide basis. Coleman v. GMAC, 296 F.3d 443, 449 (6th Cir. 2002). Courts have found incidental damages to refer to damages requiring mechanical computation, "'without the need for individual calculation'... so that a separate damages suit by individual class members would be a waste of resources." In re Allstate Ins. Co., 400 F.3d 505, 507 (7th Cir. 2005).

The Plaintiffs and putative class members assert that certification under 23(b)(2) is permissible because the monetary damages they seek are "in the form of *only* a) unpaid back wages, calculated through the application of *damages formulae* that do not involve individualized determinations; and b) statutory damages, applied classwide." (Docket Entry No. 270, Plaintiffs' Post-Hearing Brief at 1). Plaintiffs also point out that they "do not seek compensatory or punitive

25

damages that would complicate or prevent joinder." Id. The Defendants insist that the claims for

monetary relief necessarily predominate over the claims for injunctive relief primarily because the

computation of such damages is dependent upon the subjective differences among class members.

Under Rule 23(b)(2), plaintiffs are entitled to class certification when defendants act or fail

to act in a manner generally applicable to the class, for which final injunctive and/or declaratory

relief is appropriate.  Here, Plaintiffs request injunctive relief for the following alleged AWPA

violations:

> 1) Defendants' operation of a piece-rate payment system that a) uses self-described
> "complicated" and "unique" calculations that are never disclosed to their tree
> planters...; b) induces productivity by conveying false and misleading information
> about the basis on which the planters' piece rate wages are being paid; and c)
> violates the parties' working arrangement by failing to compensate the planters for
> every 1000 trees that they individually and correctly plant, as promised in their
> written work contracts...

> 2) Defendants' provision of false and misleading information to their H-2B
> workers on their written pay statements.  Plaintiffs seek equitable relief for these
> violations, including an injunction mandating the disclosure of information that the
> AWPA requires to be...disclosed, and eliminating the placement of other
> information on the workers' pay statements tending to mislead them about the
> basis of their wages...

> 3) Defendants' systemic, continuing failure to pay the in-bound transportation, visa
> and related expenses incurred by their H-2B workers in order to work for
> Defendants in the United States...

(Docket Entry No. 270, Plaintiffs' Post-Hearing Brief at 2-3).  As to the first claim, Plaintiffs

contend that the unpaid wage damages would be incidental to the final injunction and would be

calculated using damages models derived from information in the Defendants' possession, or

alternatively, through an award of statutory damages divided amongst the class. Id. at 3.  As to

the second claim, Plaintiffs' claim for statutory damages can be divided amongst the class. Id.  As

26

to Plaintiffs' other incidental monetary relief, the application of a formula common to each class

member can be used to calculate damages. Id. at 4.

In Coleman, the court noted that "class treatment of claims is most appropriate where it is

not economically feasible for individuals to pursue their own claims." 296 F.3d at 449.  This

notion

> leav[es] open the possibility that, where the individualized damages are likely to be
> very low, a 23(b)(2) action including such damages may be maintained.  Coleman,
> 296 F.3d at 449; see also Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 64 (3d
> Cir. 1994) (stating that the Rule 23(b)(2) option was intended specifically to
> "foster institutional reform by facilitating suits that challenge widespread rights
> violations of people who are individually unable to vindicate[] their own rights").

Staley v. Wilson County, No. 3:04-1127, 2006 U.S. Dist. Lexis 58904 at *28 (M.D. Tenn. Aug.

18, 2006) (Trauger, J.).   This circuit has upheld certified class actions under 23(b)(2) including

requests for monetary damages on that basis.  Id.  In Senter v. General Motors Corp., 532 F.2d

511, 525 (6th Cir. 1976), the Sixth Circuit held that "the additional request for back pay does not

preclude certification as a 23 (b)(2) class action."  See also Alexander v. Aero Lodge No. 735,

Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, 565 F.2d 1364, 1372 (6th Cir. 1977)

("A request for back pay does not preclude certification under [23(b)(2)]." (citations omitted).

To be sure:

> While it is true that a claim for back pay implicates some of the same efficiency
> concerns we have cited today as part of our reasoning for excluding compensatory
> damages from a Rule 23(b)(2) class, back pay is qualitatively different from
> compensatory damages...because calculation of back pay generally involves less
> complicated factual determinations and fewer individualized issues...
>
> More importantly, as an equitable remedy, back pay does not involve the more
> significant issues of procedural fairness and constitutionality raised by the
> inclusion of plaintiff's compensatory damages claim in this class."

Case 1:06-cv-00006   Document 305   Filed 03/28/08   Page 27 of 34 PageID #: 4126

<u>Coleman</u>, 296 F.3d at 449, 450.

The Defendants assert that Plaintiffs' claims for back pay are not certifiable under 23(b)(2) because they involve individualized calculations. The Court disagrees. The Sixth Circuit permits back pay among the remedies available under 23(b)(2), despite the individual determinations of back pay calculations. Defendants rely on language in <u>Coleman</u> to support their proposition ("the underlying premise of (b)(2) certification... begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries."). The Defendants, however overlook other relevant portions of that case, such as that quoted <u>supra</u> and the fact that a single origin of information regarding back pay (i.e., a single employer, as is the case here), allows for more efficient damages calculations. In addition, in clarifying the permissibility of back pay in a 23(b)(2) action, the <u>Reeb</u> explained: "...back pay is an equitable remedy that does not implicate the procedural and constitutional issues that a damage award does." <u>Reeb</u>, 435 F.3d at 650. The Court finds that the issue of back pay is certifiable under 23(b)(2).

Moreover, a finding of liability on any or all Plaintiffs' claims would qualify them for statutory damages. Thus, an award of statutory damages would originate from a finding of Defendants' liability to the class as a whole and be divided equally among the class members– no individual calculations are necessary. Consequently, an award of statutory damages would be incidental to the declaratory and injunctive relief Plaintiffs seek and would not defeat 23(b)(2) certification. A finding that visa and travel expenses are primarily for Defendants' benefit would make the Defendants liable for damages to the entire class without individual calculation. Reimbursement of visa and travel expenses that is within a defined range is therefore, incidental

28

to the declaratory and injunctive relief sought and does not prelude 23(b)(2) certification.

### b. Dual Certification

To the extent that Plaintiffs seek damages that are not incidental to injunctive and declaratory relief sought, those claims can be certified under Rule 23(b)(3) in some instances. <u>See</u> Fed. R. Civ. P. 24(c)(4) ("an action may be brought or maintained as a class action with respect to particular issues..."). Defendants insist that it is inappropriate for this Court to certify Plaintiffs class under 23(b)(2) and (3) because the Rule is "written in the disjunctive" and inapposite to <u>Reeb</u>. The Sixth Circuit however, has upheld class certifications under both 23(b)(2) and (3). <u>See</u> <u>Olden v. LaFarge Corp.</u>, 383 F.3d 495 (6th Cir. 2004) (upholding certification under both 23(b)(2) and 23(b)(3)). In <u>Olden</u> the Sixth Circuit stated:

> Disputes over whether [an] action is primarily for injunctive...relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed. Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. <u>Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions.</u>

<u>Id.</u> at 510-11 (citing 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, 2d. § 1775) (emphasis supplied). Thus, the Court concludes that dual certification is appropriate.

### c. Rule 23(b)(3)

To certify a class under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

29

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." Amchem Products, Inc., 521 U.S. at 615 (internal quotation marks omitted). Defendants insist that Plaintiffs' common claims do not predominate over individual concerns.

As to whether common questions predominate, the Plaintiffs define the common issues on the independent money damages claims as follows:

> a) whether "PL Hours" on Defendants' standard pay documents..., that are used by all tree planting crew leaders to record the work hours of their crew members, were used to record only "planting hours"? b) whether work regularly performed by tree planters before "planting hours" began was compensable? c) whether Defendants had a policy and/or practice of docking the work hours for slower planters, to reduce their wages and evade prevailing and overtime wage obligations? d) whether Defendants had a policy and/or practice of failing to compensate members of their spraying crews for all compensable work time, including time spent traveling to a second or subsequent job site in a single work day?

(Docket Entry No. 270, Plaintiffs' Post Hearing Brief at pp. 6-7, n.1). Here, as far as nonincidental money damages are concerned, Plaintiffs' common claims predominate over questions affecting only individual members. Specifically, issues a through d quoted above, relate to SFSI policies and practices that would apply, mainly to the class as a whole.[17] As to

---

[17] As noted supra, the Court suggested that subclasses could be used, where necessary. Under 23(c)(4):

> When appropriate (A) an action may, be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

Fed. R. Civ. P. 23(c)(4). Here, a subclass may be appropriate if there exists, any member of the

30

Defendants' contention that individual concerns predominate over common issues, the Court disagrees. As the Olden Court has held, "individual damage determinations might be necessary, but the plaintiffs have raised common allegations which would likely allow the court to determine liability...for the class as a whole." Olden, 383 F.3d at 508. In Olden, the Court found that despite individual injuries, such as wheezing, nausea, headaches, etc., the thrust of plaintiffs' complaint was related to the general increased risk of suffering in the future– whether defendant's action caused some increased health risk. Id. Here, the thrust of the complaint is the treatment of guest workers with SFSI's forestry operation– whether that treatment systematically violated the AWPA. While damages may differ, damages also illustrate the alleged common violations under the AWPA that protects as a statutorily defined group, foreign workers in the United States.

As to whether a class action is a superior method for the fair and efficient adjudication of this action, the Plaintiffs are vulnerable workers with extremely limited resources rendering separate actions highly unlikely. The putative class members, indigent, foreign nationals whose lack of understanding of the English language and the laws of the United States pose substantial barriers to individual actions. The Court concludes that class certification here is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency. Separate actions would run the risk of inconsistent judgments. Thus, the Court finds that certification of the claims for nonincidental damages is appropriate under Rule 23(b)(3).

### 3. Statute of Limitations

proposed class, that did not plant trees at all, rather only worked in spraying herbicides. The same would be true of employees who worked only as sprayers and not as tree planters. This issue can be resolved through a separate motion.

31

Defendants assert that should the Court decide to certify this action, that the statute of limitations on claims should be no more than three years. (Docket Entry No. 231, Defendant's Memorandum in Opposition at p. 38 and Docket Entry No. 111, Motion for Protective Order). In support of this contention, Defendants point to the Court's previous denial of the Plaintiffs' motion to certify the class (Docket Entry No. 43) and Plaintiffs' motion to proceed as a collective action (FLSA claim) (Docket Entry No. 48). The Court's prior denial of Plaintiffs' motion to certify class was without prejudice to renew. In addition, the Court provisionally certified the FLSA claim as a collective action (Docket Entry No. 205).

Defendants further assert that because the AWPA is silent as to statute of limitations, that Tennessee state law should fill the gap. Specifically, Defendants claim that Tenn. Code Ann. § 28-3-105 governing torts and property loss should apply here. Tenn. Code Ann. § 28-3-105 applies a three year statute of limitations for "[c]ivil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefore, when no other time limitation is fixed by the statute creating such a liability." Defendants also contend that because the AWPA requires an employer to maintain employees' wage records for three years, that the applicable period of limitations should be only three years.

The Plaintiffs contend that the appropriate limitations period under the AWPA is six years, not three. (Docket Entry No. 127, Plaintiffs' Response to Defendants' Motion for Protective Order). Plaintiffs' acknowledge that the AWPA is silent as to a limitations period, and argue that the Court should "borrow" from Tennessee law governing contract disputes that has a six year limitations period. Plaintiffs' argue that the six year statute of limitations provided to contract

32

disputes in the state of Tennessee, T.C.A. § 28-3-109(3) should fill the gap given that these claims arise out of an employment agreement.  The Court agrees.

Here, the class claims are centered around various contracts; (1) whether the AWPA working arrangement was breached; (2) whether SFSI failed to pay wages when due; and (3) whether SFSI failed to make and provide accurate payroll records.  Any liability for this claims arise out of: (1) the  alleged breach of the work agreement; (2) the promises SFSI made to the government in order to be granted work permits for foreign workers; and (3)  whether the work agreement and corresponding policies violate the AWPA.  Moreover, the Plaintiffs point out that it is the essence of the claim that is of import in determining statute of limitations.  The Defendants argue that because a statute is involved, T.C.A. § 28-3-105(3) applies.

On the statute of limitations issue, Tennessee law directs the Court to examine the nature of the claim to determine the appropriate statute of limitations.  Pera v. Kroger Co., 674 S.W.2d 715, 719  (Tenn.1984) ("It is well settled in this state that the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations.").  The gravamen of this action, is the Defendants' breaches of duties to Plaintiffs, arising out of contracts.  The AWPA protects foreign workers in the United States.  In Tennessee, other federal employment laws are given the six year statute of limitations when the federal law is silent.  For example, ERISA, also silent on statute of limitations, allows beneficiaries to sue for violations of the terms of statutorily required contracts using the six year statute of limitations.  Moffitt v. Whittle Communications, L.P., 895 F.Supp. 961, 971 (E.D.Tenn.,1995).  Finally, this Court finds Escolastico De Leon-Granados v. Eller and Sons Trees, Inc., 452 F.Supp.2d 1282 (N.D.Ga. 2006) instructive.  In that action, the court found a six year statute of limitations based in contract

33

applied to plaintiffs' AWPA claims. Id. at 1284. The district court found six years to be appropriate because plaintiffs sought redress for breaches of their "working arrangement" embodied in the defendant's "Job Clearance Orders" and in Defendant's disclosure contract, which set forth Plaintiffs' terms and conditions of employment, and which Defendant required each worker to sign before starting work. Id. Particularly insightful here, the district court stated:

> ...selecting the six-year limitations period over the two-year limitations period comports with "our paramount duty ... to effectuate the federal policies embodied in the AWPA statutory scheme." Barajas v. Bermudez, 43 F.3d 1251, 1260 (9th Cir.1994) (choosing longer of two potentially applicable statutes of limitations in effort to effectuate policy goals of AWPA); see also Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir.1993) ("AWPA is a remedial statute and should be construed broadly to effect its humanitarian purpose."); Sanchez v. Morrison, 667 F.Supp. 536, 538 (W.D.Mich.1987) (noting the broad remedial purposes of the AWPA in deciding to apply Michigan's six-year statute of limitations for breach of contract rather than the three-year period for injury to property or person).

Id. Thus, the Court concludes that the appropriate statute of limitations here is six years.

For the reasons stated above, the Court concludes that class certification in this action is appropriate under both Rule 23(b)(2) and 23(b)(3) with the class members' claims governed by the six years statute of limitations. Accordingly, the Defendants' motion for a protective order limiting discovery (Docket Entry No. 111) should be denied.

**ENTERED** the 28th day of March, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge

34