IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSE ROSILES-PEREZ, ) <br> JESUS SANTIAGO-SALMORAN, and ) <br> ANDRES ALDANA-MORENO, ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SUPERIOR FORESTRY SERVICE ) <br> INC., SCOTT BARSTOW, and ) <br> WILLIAM IOUP, ) <br> ) <br>       Defendants. ) | CASE NO. 1:06-CV-00006 <br><br> Judge William J. Haynes <br> Magistrate Judge Juliet Griffin |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO PLAINTIFFS' MOTION TO REOPEN CONTEMPT PROCEEDINGS AND FOR OTHER RELIEF

Plaintiffs moved to reopen contempt proceedings and for other relief ("Plaintiffs' Motion"). [Docket No. 318]. The Court ordered that hearing be held on Plaintiffs' Motion. [Docket No. 325]. Defendants opposed Plaintiffs' Motion. [Docket No. 326]. The Court held a hearing on May 23, 2008. At the hearing, the Court heard the testimony of Hayley Tester ("Tester"), Pedro Flores ("Flores"), Oscar Hernandez-Espina ("Oscar") and Jorge Ancelmo-Martinez ("Jorge"). The Court also accepted into evidence the declarations that the parties filed with their briefs relating to the Plaintiffs' Motion, subject to hearsay and other objections. Based on the testimony of the witnesses at the hearing, the declarations filed by the parties, and the record in this action, the Court makes the following findings of fact and conclusions of law:

# FINDINGS OF FACT

## I. Complaint

The original Plaintiffs initiated this action in January 2006 by filing the Complaint. [Docket No. 1-1]. The Complaint seeks class action status for all non-supervisory H-2B employees during the period from January 2000 through the filing of the Complaint [Docket No. 1-1, ¶ 1], which was January 25, 2006.

## II. May 23, 2006 Order and Related Circumstances

On May 23, 2006, this Court entered a protective order drafted by Plaintiffs in this matter (the "May 23 Order") [Docket No. 91]. The part of the Order relevant to the Plaintiffs' Motion stated:

> Defendants and their employees, agents, including their attorneys, and intermediaries are hereby and immediately barred from all communications with ***plaintiffs and putative class members*** about this lawsuit, except as permitted through the formal discovery process, until further order of the Court.

At the time of the issuance of the May 23 Order, the only plaintiffs in the case were the named plaintiffs and a few opt-in plaintiffs, and the only putative class members were those persons who were non-supervisory H-2B employees of the Defendants during the period from January 2000 through January 25, 2006.

Recognizing that crew leaders would not know which workers were plaintiffs or putative class members, Superior determined that it should instruct the crew leaders to deal with all employees in the same way. [Docket No. 326-3, ¶ 5]. Superior, in conjunction with the Plaintiffs' lawyers, prepared a document covering the points of the Court's protective order, translated the document into Spanish, and sent it to all crew leaders and to anyone that represented Superior. [T. 42:16-43:20].

No later than June 23, 2006, Superior notified Flores that a court order required Superior

to instruct him that he must not have any conversations with H-2B workers about any lawsuit relating to Superior and that he must not threaten or coerce or in any other way discriminate against any one who may join or has joined the lawsuit and Flores acknowledged receiving this memorandum.  [Docket No. 327-1, ¶ 4; Docket No. 326-3, ¶ 7; T. 8:5-22, 10:8-13].

### III.     January 31, 2007 Order and Related Circumstances

On January 31, 2007 the Court entered an Order [Docket No. 168] granting Plaintiffs' motion for sanctions and a finding of contempt.  The Order required Defendants to provide to all employees the Court's May 23, 2006 Order [Docket No. 91] and the Court's January 31, 2007 Order [Docket No. 168].

By Memorandum dated January 31, 2007, Superior forwarded to all crew leaders the Orders of May 23, 2006 and January 31, 2007.  [T. 44:17-45:2].  The January 31, 2007 transmittal memorandum stated, "Additionally, any communication with employees or former employees of Superior Forestry regarding any lawsuit related to Superior Forestry is strictly prohibited."  [Docket No. 327-1, ¶ 5; Docket No. 326-3, ¶ 8].  No later than February 2, 2007, Flores acknowledged receiving a copy of the May 23, 2006 Order and the January 31, 2007 Order and giving a copy of the orders to the employees on his crew who also acknowledged receipt.  [Docket No. 327-1, ¶ 5; Docket No. 326-3, ¶ 8; T. 8:5-22, 10:8-13, 45:3-46:23].

### IV.     February 9, 2007 Order and Related Circumstances

By Order dated February 9, 2007, the Court granted Plaintiffs' motion for additional notice to persons protected by the earlier Orders of May 23, 2006 and January 31, 2007.  The February 9, 2007 Order required the Defendants to translate into Spanish and to provide to employees the Orders of May 23, 2006, January 31, 2007 and February 9, 2007.  [Docket No. 174].

3

By Memorandum dated March 7, 2007, Superior forwarded to all crew leaders the Orders of May 23, 2006, January 31, 2007 and February 9, 2007. [T. 46:24-47:24]. The March 7, 2007 Memorandum also stated, "Additionally, any communication with employees or former employees of Superior Forestry regarding any lawsuit related to Superior Forestry is strictly prohibited." [Docket No. 327-1, ¶ 6; Docket No. 326-3, ¶ 9]. No later than the week ending March 10, 2007, Flores acknowledged receiving copies of the May 23, 2006 Order, the January 31, 2007 Order, and the February 9, 2007 Order, which had been translated into Spanish, and giving a copy of the orders to the employees on his crew. [Docket No. 327-1, ¶ 6; Docket No. 326-3, ¶ 9; T. 8:5-22, 10:8-13].

## V.  October 22, 2007 Hearing and Subsequent Notice to Crew Leaders

At a hearing on October 22, 2007, in an exchange with Defendants' counsel, the Court stated:

> I'm telling you today, if anybody talks to a class member without an order of the Court, there is going to be an ultimate sanction imposed. Does everybody understand that? And you'd better tell your supervisors. I've already issued one order where that was ignored. But this one better be communicated, and I mean today.

[Transcript of October 22, 2007 Hearing 58:13-18]. No formal written order was entered. Superior had no crew leaders at the time of the Court's instruction in October 2007 because the work ended and their visas expired. [T. 53:2-8, 53:13-20]. Flores was at his residence in Mexico on October 22, 2007. [T. 10:18-11:4]. Superior delivered the memorandum and the translated orders to the supervisors and crew leaders when they returned to the United States in November 2007, December 2007 or January 2008. [T. 38:19-40:8, 48:13-50:16]. Flores received another copy of the memorandum and translated orders when he returned to the United States in December 2007. [T. 8:15-22, 10:8-13].

4

## VI. Relevant Facts Relating to the Status of Oscar and Jorge as Participants in this Action

Oscar did not commence employment with Superior before January 2008. [Docket No. 320, ¶¶ 1, 3; Docket No. 326-3, ¶ 3; T. 57:12-13, 71:7-12, 73:5-7]. Oscar did not become a plaintiff in this litigation until he filed a consent-to-sue on or about March 26, 2008. [Docket No. 302].

Jorge did not commence employment with Superior before December 2007. [Docket No. 321, ¶¶ 1, 3; Docket No. 326-3, ¶ 4; T. 78:25-79:2]. Jorge did not become a plaintiff in this litigation until he filed a consent-to-sue on or about March 26, 2008. [Docket No. 302].

## VII. March 28, 2008 Order

On March 27, 2006, Plaintiffs moved to certify the case as a class action. [Docket No. 43]. On June 21, 2006, the Court denied that motion without prejudice to allow for renewing the motion upon completion of discovery. [Docket No. 102].

Plaintiffs renewed its motion to certify the case as a class action in August 2007. [Docket No. 221]. After considering the motion, the Court issued an Order dated March 28, 2008 [Docket No. 306], which limited the class to non-supervisory employees who were admitted as H-2B workers and who were employed by Defendants at any time from January 2000 to January 2006.

## VIII. Statements Allegedly Made by Flores

There is a dispute about whether Flores made certain statements to Oscar and Jorge that would violate the terms of the May 23 Order.

The alleged conversation between Oscar and Flores allegedly occurred in February 2008. [Docket No. 320, ¶ 6, T. 60:16-18]. Oscar testified that he had conversation with Flores about

5

working conditions and pay.  According to Oscar, Flores told him that if had any complaints to call Hector Santillan, that there already was a lawsuit against the company, that the only thing he would get out of the lawsuit is a kick in the butt, and that he would not have a visa or work. [T. 60:21-61:5].  Oscar also testified that Flores told him to join the lawsuit if he wanted.  [T. 61:11-14].  Oscar mentioned his conversation with Flores only to his brothers Luis and Jose Espina. [T. 70:2-8], both of whom became opt-in plaintiffs.  [Docket No. 302 and 307].

The alleged conversation between Jorge and Flores occurred earlier this year and, notably, the date of his declaration is March 26, 2008. [Docket No. 321, ¶¶ 4, 5].  Jorge testified that Flores mentioned the lawsuit to him.  [T. 75:18-19].  According to Jorge, Flores asked him if he was going to join the lawsuit and Jorge said that he would.  Flores told him that he could not join the lawsuit because all the people who joined the lawsuit were going to lose and that the company could institute a suit and put him in jail.  Jorge understood that to be a threat. [T. 76:12-21].  Jorge confirmed that no one else was present during the conversation.  [T. 77:6-9].  Jorge mentioned his conversation with Flores only to Oscar, Luis Espina, Ramundo and Jose Espina during a meeting with the Plaintiffs' lawyers. [T. 65:19-25, 81:16-82:8].

Although Oscar and Jorge claim they were told not to join the lawsuit, all five of the workers on Flores' crew who attended the meeting with Plaintiffs' lawyers, including Oscar and Jorge, are now opt-in plaintiffs: Oscar Hernandez-Espina, Jorge Ancelmo-Martinez, Raymundo Luna Ochoa, Jose Hernandez-Espina, and Luis Hernandez-Espina. [Docket No. 302 and 307; Docket No. 326-3, ¶ 13; T. 65:19-25].

Flores denies the allegations presented by Oscar and Jorge.  Flores never discussed the lawsuit with either Oscar or Jorge.  [Docket No. 327-1, ¶ 7; T. 22:20-22, 30:12-14; 32:14-15].  Although Flores agrees that the workers complain about the working conditions, Flores never

6

said that the types of complaints that Oscar was making were the same type that the workers who brought the lawsuit made. [Docket No. 327-1, ¶ 7]. Flores also never said that anyone who joined the lawsuit was run out of the company (and were "kicked in the butts") and never hired again. [Docket No. 327-1, ¶ 7]. Flores never discussed the lawsuit with Jorge, even though Jorge was his roommate during March 2008. [Docket No. 327-1, ¶ 8]. Flores never told Jorge not to join the lawsuit because the workers who brought it were going to lose and those who participated might be countersued by the company for breach of contract. [Docket No. 327-1, ¶ 8]. Flores never said anything like that. [Docket No. 327-1, ¶ 8]. If the workers had questions about the lawsuit, Flores told them go talk to the bosses. [Docket No. 327-1, ¶ 7; T. 32:16-19]. Flores told them that he did not know anything about lawsuit and he could not discuss it. [Docket No. 327-1, ¶ 7].

Flores denies threatening any workers on the basis of their joining the lawsuit. [Docket No. 327-1, ¶ 11]. He also denies that his brother, Jesus Flores, encouraged him to threaten workers. [Docket No. 327-1, ¶ 11]. Pedro Flores has never heard Jesus Flores threaten the H2B workers on the basis of their joining the lawsuit. [Docket No. 327-1, ¶ 11]. Both Jesus Flores and Pedro Flores have obeyed Superior's instructions not to discuss the lawsuit with the H2B workers and not to threaten the workers based on their decision to join the lawsuit. [Docket No. 327-1, ¶ 11].

## IX.  Superior Has Never Retaliated Against Any Workers

There is no evidence that the Defendants have retaliated against workers based on their participation in this lawsuit. Allegations that Superior has terminated or refused to hire workers because they joined the lawsuit have no merit. [Docket No. 326-3, ¶ 11]. For the most recent tree planting season, Superior employed 304 workers who are class members, 16 workers who

7

are opt-in plaintiffs, and 1 worker who is a named plaintiff. [Docket No. 326-3, ¶ 11]. Whether Superior invites workers to return depends on their overall job performance. [Docket No. 326-3, ¶ 11]. For example, Superior invited Luis Hernandez-Espina, who is a class member and opt-in plaintiff, to return. [Docket No. 326-3, ¶ 11]. Even if Superior invites workers to return, the workers may decide not to return for their own reasons. [Docket No. 326-3, ¶ 11].

More specifically, Plaintiffs cannot show that Superior has retaliated against Oscar, Luis or Jorge because of their joining the lawsuit. All three voluntarily left employment at the end of the southern tree planting season, even though they had the opportunity to stay and work in other parts of the country. [Docket No. 326-3, ¶ 12; T. 71:23-72:12]. Superior did not terminate Jorge even after he was involved in a fight near the end of the planting season. Jorge was drunk along with several other people. [Docket No. 327-1, ¶ 10]. An argument occurred over the type of music that was being played and the end result was Jorge stabbed another worker in the leg. [Docket No. 327-1, ¶ 10].

## X.     Oscar and Jorge Have an Improper Motive

Plaintiffs' motive for bringing these disputed allegations is the ***desire for more money***. One evening while Flores was in his room several of the Hernandez-Espina brothers were talking with Jorge about the lawsuit directly outside the room. [Docket No. 327-1, ¶ 9]. The door was open so Flores could overhear them. [Docket No. 327-1, ¶ 9]. Flores recalls them saying "Well we need to call this lawyer because the lawyer can help us get paid more." [Docket No. 327-1, ¶ 9]. Instead of increasing their productivity to earn more money, Oscar, Luis and Jorge try to take the easy route and call the lawyer. After talking with Plaintiffs' counsel who assisted in preparing their declarations, their motive is confirmed. Both Oscar and Luis emphasize in their declarations that "we came here to earn money." [Docket 320, ¶ 5; Docket 322, ¶ 5]. Money is

their motive, not truth or justice. Accordingly, their declarations and their testimony lack credibility.

## XI. Facts Regarding Superior's Other Workers

Superior also operated more than Flores' crew at the time. During February and March 2008, the number of crews that Superior operated fluctuated between 29 and 35. [Docket No. 326-3, ¶ 10]. It is difficult to provide an exact count of non-supervisory H2B workers for a month as the number fluctuates. [Docket No. 326-3, ¶ 10]. Based on averaging the numbers working at the beginning of each week in February and March 2008, the average number of non-supervisory H2B workers was 486 for February and 413 for March. [Docket No. 326-3, ¶ 10]. Plaintiffs have not established and cannot establish that the other 28 to 34 crews and over 400 workers were affected by the statements attributed to Flores.

## CONCLUSIONS OF LAW

### I. Plaintiffs Fail To Provide Clear And Convincing Evidence That The Defendants Were Not in Substantial Compliance With The Order

#### A. Legal Standards

The parties' prior briefs [Docket Nos. 106 and 114] and this Court's prior opinion [Docket No. 167] have addressed the legal standards for contempt findings and sanctions. Plaintiffs have the burden of demonstrating by clear and convincing evidence that the Defendants are not in *substantial compliance* with the Court's orders. *See Peppers v. Barry*, 873 F.2d 967 (6th Cir. 1989). Plaintiffs drafted the language of the May 23, 2006 Order and, as a result, any ambiguities in the language should be construed against them. *See Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991). Furthermore, ambiguities must be resolved in favor of persons charged with contempt. *Grace v. Center for Auto Safety*, 72 F.3d 1236 (6th Cir. 1996) (citing *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990)).

B. **Even if the Alleged Conversations Occurred, Oscar and Jorge Were Not in the Group of People with whom the May 23 Order Prohibited Communication**

Although the Court has expressed concern about the statements attributed to Flores [T. 84:16-19], Plaintiffs fail to meet their burden to demonstrate by clear and convincing evidence that Defendants are not in substantial compliance with the May 23, 2006 Order or the October 22, 2007 instruction because neither Oscar nor Jorge is a member of the class or a named plaintiff and neither Oscar nor Jorge was an opt-in plaintiff at the time the alleged conversations occurred. Oscar did not commence employment with Superior before January 2008. [Docket No. 320, ¶ 3; Docket No. 326-3, ¶ 3; T. 71:7-9]. The alleged conversation between Oscar and Flores allegedly occurred in February 2008. [Docket No. 320, ¶ 6; T. 60:16-18]. Oscar did not become a plaintiff in this litigation until he filed a consent-to-sue on or about March 26, 2008. [Docket No. 302]. Jorge did not commence employment with Superior before December 2007. [Docket No. 321, ¶ 3; Docket No. 326-3, ¶ 4; T. 78:25-79:2]. The alleged conversation between Jorge and Flores allegedly occurred earlier this year and, notably, the date of his declaration is March 26, 2008. [Docket No. 321, ¶¶ 4, 5]. Jorge did not become a plaintiff in this litigation until he filed a consent-to-sue on or about March 26, 2008. [Docket No. 302]. According to the Order dated March 28, 2008 [Docket No. 306] the class is limited to non-supervisory employees who were admitted as H-2B workers and who were employed by Defendants at any time from January 2000 to January 2006. Therefore, Oscar and Jorge were not named plaintiffs, opt-in plaintiffs or putative class members at the time of the alleged conversations.

C. **Even if the Alleged Conversations Occurred, There is No Evidence that the Defendants Retaliated Against any Worker**

Plaintiffs presented no evidence that the Defendants have retaliated against any worker. Allegations that Superior has terminated or refused to hire workers because they joined the

10
Case 1:06-cv-00006 Document 331 Filed 06/13/08 Page 10 of 19 PageID #: 4612

lawsuit have no merit. [Docket No. 326-3, ¶ 11]. For the most recent tree planting season, Superior employed 304 workers who are class members, 16 workers who are opt-in plaintiffs, and 1 worker who is a named plaintiff. [Docket No. 326-3, ¶ 11]. Whether Superior invites workers to return depends on their overall job performance. [Docket No. 326-3, ¶ 11]. For example, Superior invited Luis Hernandez-Espina, who is a class member and now an opt-in plaintiff, to return. [Docket No. 326-3, ¶ 11]. Even if Superior invites workers to return, the workers may decide not to return for their own reasons. [Docket No. 326-3, ¶ 11].

More specifically, Plaintiffs cannot show that Superior has retaliated against Oscar, Luis or Jorge because of their joining the lawsuit. All three voluntarily left employment at the end of the southern tree planting season, even though they had the opportunity to stay and work in other parts of the country. [Docket No. 326-3, ¶ 12]. Superior did not terminate Jorge even after he was involved in a fight near the end of the planting season. Jorge was drunk along with several other people. [Docket No. 327-1, ¶ 10]. An argument occurred over the type of music that was being played and the end result was Jorge stabbed another worker in the leg. [Docket No. 327-1, ¶ 7].

### D. Even if the Alleged Conversations Occurred, Defendants Have Substantially Complied with the Court's Orders

Defendants' actions prior to the filing of Plaintiffs' Motion [Docket No. 318] demonstrate substantial compliance. Recognizing that crew leaders would not know which workers were plaintiffs or putative class members, Superior determined that it should instruct the crew leaders to deal with all employees in the same way. [Docket No. 326-3, ¶ 5]. No later than June 23, 2006, Superior notified Flores that a court order required Superior to instruct him that he must not have any conversations with H-2B workers about any lawsuit relating to Superior and that he must not threaten or coerce or in any other way discriminate against any one who

11
Case 1:06-cv-00006 Document 331 Filed 06/13/08 Page 11 of 19 PageID #: 4613

may join or has joined the lawsuit.  [Docket No. 327-1, ¶ 4; Docket No. 326-3, ¶ 7].

By Memorandum dated January 31, 2007, Superior forwarded to all crew leaders the Orders of May 23, 2006 and January 31, 2007.  The January 31, 2007 transmittal memorandum stated, "Additionally, any communication with employees or former employees of Superior Forestry regarding any lawsuit related to Superior Forestry is strictly prohibited."  [Docket No. 327-1, ¶ 5; Docket No. 326-3, ¶ 8].  No later than February 2, 2007, Flores acknowledged receiving a copy of the May 23, 2006 Order and the January 31, 2007 Order and giving a copy of the orders to the employees on his crew.  [Docket No. 327-1, ¶ 5; Docket No. 326-3, ¶ 8].

By Memorandum dated March 7, 2007, Superior forwarded to all crew leaders the Orders of May 23, 2006, January 31, 2007 and February 9, 2007, which had been translated into Spanish.  [Docket No. 327-1, ¶ 6; Docket No. 326-3, ¶ 9].  The March 7, 2007 Memorandum also stated, "Additionally, any communication with employees or former employees of Superior Forestry regarding any lawsuit related to Superior Forestry is strictly prohibited."  [Docket No. 327-1, ¶ 6; Docket No. 326-3, ¶ 9].  No later than the week ending March 10, 2007, Flores acknowledged receiving a copy of the May 23, 2006 Order, the January 31, 2007 Order, and the February 9, Order, which had been translated into Spanish, and giving a copy of the orders to the employees on his crew.  [Docket No. 327-1, ¶ 6; Docket No. 326-3, ¶ 9].

In compliance with the Court's instructions of October 22, 2007, crew leaders received a packet of information regarding the lawsuit before they began work, as they were placed on Superior's payroll.  [T. 48:13-50:16].

## II. Even if the Alleged Conversations Occurred, Plaintiffs' Requests for Relief are Inappropriate

### A. Legal Standard

The Sixth Circuit requires that sanctions be proportional to the harm caused by the

alleged misconduct, as well as "the probable effectiveness of any suggested sanction in bringing about the result desired." *Glover v. Johnson*, 199 F.3d 310, 312 (6th Cir. 1999) (citing *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

Because Defendants are in substantial compliance with the Order, sanctions are inappropriate and unwarranted. Furthermore, there is nothing in Plaintiffs' Motion which outlines any damages that have been incurred as a result of any alleged violation of the May 23, 2006 Order in this matter. Luis, Oscar and Jorge became opt-in Plaintiffs after the alleged conversations occurred. Luis appears to be a class member, but Oscar and Jorge cannot be class members because they were first employed after January 2006. Thus, even if the alleged misconduct occurred, there is no harm because Luis, Oscar and Jorge are full participants in this lawsuit.

Nothing is gained by imposing sanctions when no harm has resulted from any alleged violation, and no monetary sanction would provide protections to anyone from any retaliatory or coercive actions.

### B. Plaintiffs' Motion Has Wasted the Resources of the Court and Defendants

Plaintiffs' Motion was totally unnecessary. The May 23, 2006 Order, which was drafted by Plaintiffs' counsel, prohibits communications with plaintiffs and putative class members about the lawsuit. The Court's records show that Oscar and Jorge are not named plaintiffs. The Declarations of Oscar and Jorge demonstrate that they cannot be class members because they were not employed until after January 2006. In addition, Plaintiffs' counsel knew that Oscar and Jorge were not named plaintiffs or opt-in plaintiffs at the time of the alleged conversations because Plaintiffs' counsel did not file the Consents-to-Sue for Oscar and Jorge until ***after*** the alleged conversations occurred. Accordingly, Plaintiffs should not be rewarded with any other

relief because no violation of the May 23, 2006 Order or any other order has occurred.

### C. Even if the Alleged Conversations Occurred, There is No Damage to Repair or Injury to Remedy

Contrary to the assertions and innuendo of Plaintiffs' counsel, there is no damage to repair even if the allegations of Oscar and Jorge were true. Both Oscar and Jorge became opt-in plaintiffs along with three other members of Flores' crew during March 2008. Furthermore, there is absolutely no evidence of Flores discouraging other crew members from joining the lawsuit or of other crew leaders discouraging their crew members from joining the lawsuit. Most importantly, there is no evidence of Defendants' encouraging Flores to make the alleged statements, and, in fact, the Defendants' communications have prohibited any communications with H-2B workers about any lawsuit.

Superior also operated more than Flores' crew at the time. During February and March 2008, the number of crews that Superior operated fluctuated between 29 and 35. [Docket No. 326-3, ¶ 10]. Based on averaging the numbers working at the beginning of each week in February and March 2008, the average number of non-supervisory H2B workers was 486 for February and 413 for March. [Docket No. 326-3, ¶ 10]. Obviously, Plaintiffs have not established and cannot establish that the other 28 to 34 crews and over 400 workers were affected by the statements falsely attributed to Flores.

### D. Even if the Alleged Conversations Occurred, Plaintiffs' Requests for Relief Bear No Rational Relationship to the Facts

The preceding facts do not support Plaintiffs' requests for (1) an eight month extension of the FLSA opt-in period, (2) tolling of the FLSA statute of limitations to April 11, 2006, (3) an opportunity for Plaintiffs' counsel to meet in person with each member of Superior's more than 30 crews all over the country, (4) Superior's paying the legal and other expenses associated with

the meetings that Plaintiffs' counsel wants to have with Superior's employees, or (5) Superior's compensating its employees while Plaintiffs' counsel meets with the employees. Accordingly, an order incorporating those remedies is not appropriate.

In addition, the history of this litigation does not support Plaintiffs' requests for relief. Counsel for all parties agreed to a form of FLSA collective action notice that provided a six month period for potential plaintiffs to opt-in and requested the Court's approval by agreed motion on July 27, 2007. [Docket No. 207]. The Court granted the motion on July 30, 2007 [Docket No. 209] and issued an Order Approving the FLSA Collective Action Notice. [Docket No. 210]. Plaintiffs' counsel sent notices to over 2,900 current and former employees of Superior advising them of their right to opt-in as FLSA plaintiffs in this litigation and certified that the deadline for filing the consent-to-sue forms is March 28, 2008. [Docket No. 244]. The Spanish language notices contained that date as the deadline also. Oscar, Jorge and at least three other workers on Flores' crew appear to have opted in prior to the March 28, 2008 deadline.[1] Others appear to have opted in too. Accordingly, there is no credible evidence to warrant a further extension of the deadline.

Furthermore, Plaintiffs' reliance on the Stipulation and Restraining Order in *Hernandez v. Kovacevich "5" Farms,* No. CIV-F-04-5515 OW DLB (E.D. Cal. Apr. 25, 2005) has limited value as precedent in this case. Significantly, the Stipulation was an agreement among the parties to resolve a dispute about communications with plaintiffs in the case. Also, the defendants were not required to pay the plaintiffs' legal fees and expenses in meeting with the workers on three crews who may have been affected by the alleged comments. Furthermore, plaintiffs' counsel only had a brief meeting with each crew during a short work break.

---

[1] Plaintiffs' counsel must have forgotten her prior certification of mailing in asserting erroneously that the deadline for filing is April 10, 2008. [Docket No. 244].

Plaintiffs provide no factual or legal basis for tolling the statute of limitations for FLSA claims from April 11, 2006. Plaintiffs sent agreed upon and Court-approved notices to every current and former worker in September 2007 advising them of the March 28, 2008 deadline to opt-in. Those workers who wanted to opt-in have done so. Those workers who did not want to opt-in exercised their right not to do so. *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890 (S.D. Ohio 2004) (former employee's ignorance of FLSA law regarding overtime compensation, by itself, was insufficient to equitably toll limitations period on claims); *King v. Carey*, 405 F. Supp. 41 (W.D.N.Y. 1975) (statute of limitations continues to run for employees who do not give their consent to being plaintiffs in a suit for violation of this chapter). Applicable law establishes a two year (three years for willful violations) statute of limitations. 29 U.S.C. § 255(a). Plaintiffs now want to extend the statute of limitations for all FLSA plaintiffs and potential plaintiffs without any showing of fraud or misrepresentation by the Defendants. Such relief is neither warranted nor fair and is not in accord with precedent from the United States Supreme Court. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 2497, 65 L.Ed.2d 532 (1980) ("in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law").

There is no reason to burden Superior with coordinating and bearing the costs of meetings between Superior's employees and Plaintiff's counsel. Superior has provided Plaintiffs' counsel with information containing the names and addresses for over 2900 current and former employees of Superior. Plaintiffs' counsel has mailed written notices to those

employees of their rights to participate in this lawsuit. Those notices also contained information about how the employees could contact Plaintiffs' counsel.[2] In addition to the mailed notices, Superior has provided all employees on no less than two separate occasions with certain orders of the Court, which contained information about how those employees could contact Plaintiffs' counsel. In fact, Oscar, Jorge and Luis contacted Plaintiffs' counsel in the hope of getting more money. [Docket No. 327-1, ¶ 9]. After all of those notices, only two employees (out of 2,900 over 6 plus years) on one crew (out of more than 30 crews per year) have made allegations of improper conduct about one supervisor and those allegations are disputed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Reopen Contempt Proceedings and for Other Relief is denied.

SO ORDERED this \_\_\_\_\_ day of _____, 2008.

_____
William J. Haynes, Jr.
Judge

ORDER PREPARED BY:

 *s/Fredrick Bissinger*
Wimberly, Lawson, Seale,     Fredrick Bissinger
Wright & Daves, PLLC     BPR No.: 19671
200 4th Avenue North     *Attorney for Defendants*
Suite 900     *Superior, Scott Barstow*
Nashville, Tennessee 37219      *and William Ioup*

---

[2] Plaintiffs' counsel's own paralegal testified that mailed notice is typically the only practical way of reaching large numbers of migrant workers. [Docket No. 323, ¶ 6].

| | |
|---|---|
| Wimberly, Lawson, Steckel,<br>Schneider & Stine, P.C.<br>3400 Peachtree Rd. NE Ste. 400<br>Atlanta, Ga.  30326<br>(404)365-0900 | *s/ J. Larry Stine*<br>J. Larry Stine<br>Paul Oliver<br>Elizabeth K. Dorminey<br>*Attorneys for Defendants Superior,*<br>*Scott Barstow and William Ioup* |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSE ROSILES-PEREZ, ) | |
| JESUS SANTIAGO-SALMORAN, and ) | |
| ANDRES ALDANA-MORENO, ) | |
| on behalf of themselves and all others ) | |
| similarly situated, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:06-CV-00006 |
| ) | The Honorable William J. |
| ) | Haynes, Jr. |
| SUPERIOR FORESTRY SERVICE INC., ) | |
| SCOTT BARSTOW, and ) | |
| WILLIAM IOUP, ) | |
| ) | |
|     Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served all counsel to this action with a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REOPEN CONTEMPT PROCEEDINGS AND FOR OTHER RELIEF** has been filed with the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys on record.

This 13th day of June, 2008.

Wimberly, Lawson, Steckel,
Schneider & Stine, P.C.
3400 Peachtree Rd., N.E.
Suite 400, Lenox Towers
Atlanta, Georgia  30326

*s/J. Larry Stine*
J. Larry Stine
*Attorney for Defendants*
*Superior, Scott Barstow and William Ioup*