IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ROSILES-PEREZ, et al., | ) |
| Plaintiffs, | ) NO. 1:06-0006 |
| | ) JUDGE HAYNES |
| v. | ) |
| SUPERIOR FORESTRY SERVICE, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiffs filed this action individually and on behalf of temporary foreign guestworkers with H-2B visas against the Defendant Superior Forestry Service, Inc., ("SFSI") an agriculture employer in the forestry business and the individual Defendants, Scott Barston and William Ioup, SFSI's managers. Plaintiffs' claims are that the Defendants violated the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. § 1801 et seq., ("AWPA") and the Fair Labor Standards Act, 29 U.S.C. § 201 et. ("FLSA"). In earlier proceedings, the Court conditionally certified this action as a collective action under § 16(b) of the FLSA, 29 U.S.C. § 216(b) on Plaintiffs' FLSA claims, and AWPA claims. (Docket Entry Nos. 203 and 306).

Before the Court is the Plaintiffs' second motion for contempt (Docket Entry No. 318) for the Defendants' additional violations of the Court's May 23, 2006 Protective Order (Docket Entry No. 91) that bars communications about this action by Defendants and their agents with Plaintiffs and potential class members. The Court earlier held the Defendants in contempt for their violations of the May 23rd Order for failing to instruct

1

their supervisory and other employees immediately on the provisions of that Order to the detriment of class members. (Docket Entry Nos. 167 and 168).

In this second motion, Plaintiffs submitted evidence that earlier this year, Pedro Flores, a SFSI crew leader and the brother of another crew leader whose conduct led to the issuance of the May 23rd protective order, made statements to two putative class members discouraging them from joining this action. (Docket Entry Nos. 320 and 321). Plaintiffs also contend that Defendants again violated the Court's directive at the October 22, 2007 hearing (Docket Entry No. 318) that the Defendants immediately instruct their supervisors on the provisions of the May 23rd Order.

In response, Defendants argue the Pedro Flores was permitted to talk to the two Plaintiffs about this action because the two cited employees were not employed until after January 2006 and are therefore allegedly not protected by the May 23rd Order. The Defendants also challenged the admissibility of Plaintiffs' proof and contend that they substantially complied with the May 23rd Order.

For the reasons set forth below, the Court finds that the Defendants' agents again violated the May 23rd Order by communicating with putative class members on the merits of this litigation and discouraging putative class members from joining this action with misleading statements. The Court finds that the appropriate remedy is to extend the opt-in period for putative class members and to allow Plaintiffs' counsel to confer with putative class members to provide a balanced view of this action and the rights of the members of the putative class.

**The First Contempt Proceedings**

2

On May 9, 2006, Plaintiffs filed an emergency motion for a protective order to prohibit communications by Defendants with Plaintiffs and potential class members about this action and to prohibit retaliation and coercion against the 32 named plaintiffs and potential plaintiffs. Plaintiffs' submitted two affidavits of opt-in-Plaintiffs that Jesus Flores, a SFSI crew leader, engaged in acts of coercion and retaliation against them.

In a prior opinion, the Court found that Jesus Flores (a crew leader) testified that he was "unaware of any orders or rulings of the Court in this action." (Docket Entry No. 167, Memorandum at p. 3). Eugene Gonzalez, the Defendant's personnel manager testified that he "first learned of the Court's Order more than three weeks after its entry," and that he "had not communicated the Court's Order to his crew leaders nor [he] aware of any SFSI official who did." Id. at pp. 3-4. Gonzalez also admitted to talking to potential plaintiffs about his opinions of the lawsuit, before the protective order was entered. Gonzalez further admitted that he made statements consistent with those attributed to him by the Plaintiffs' witness that SFSI was not breaking any law and that Plaintiffs' lawyers were trying to "solicit" and "misguide" workers and that the lawyers would keep more money from this action than the workers would receive.

On May 23, 2006, the Court entered its protective order banning communications by Defendants and their agents with Plaintiffs and potential class members about this action:

> Defendants and their employees and agents, including their attorneys, and intermediaries are hereby and immediately barred from all communications with plaintiffs and putative class members about this lawsuit, except as permitted through the formal discovery process, until further order of this Court.

(Docket Entry No. 91, May 23 Order at ¶ 1). The Court further ordered:

3

> Defendant shall immediately instruct their supervisory employees and all other employees and agents who might have contact with plaintiffs and putative class members of the prohibitions of this Order and the anti-retaliation provisions of the Migrant and Seasonal Agricultural Workers Protection Act. 29 U.S.C. §201.

Id. at ¶ 14.

In August, 2006, the Court held an evidentiary hearing and on January 31, 2007 held Defendants in contempt for their failure to instruct employees immediately on the provisions of the May 23rd Order, 2007. (Docket Entry No. 168, Order). The Court found that the "just cause" language contained in the document that Defendants belatedly circulated to their supervisors, effectively circumscribed applicable statutory prohibitions on retaliations by purporting to allow retaliation in response to workers complaints that in the Defendants' supervisor's opinion, had no merit. See Plaintiffs Exhibit 4 at ¶ 7. SFSI's ranking personnel manager believed that the claims in this action lacked merit. (Docket Entry No. 167 at p. 5). The Court again ordered Defendants to distribute notice of the May 23rd Protective Order and the Order finding contempt to all SFSI employees. The Court directed the Defendants to "advise their crew leaders that the Court deems this action to be well founded and that any retaliatory conduct by [a] SFSI crew leader or agent against a plaintiff or putative class member will be addressed by the Court under the FLSA and the Court's May 23rd Order." Id. at p. 9.

The Court awarded Plaintiffs their attorney fees and costs on that motion, but reserved additional sanctions. Id. at pp. 16-17.

### Defendants' Compliance with the May 23rd Order

On February 2, 2007, Defendants filed Ioup's affidavit that Defendants had sent copies of the May 23, 2006 protective order and Contempt Order to current crew leaders

and to those former crew leaders who had received the June 2006 memorandum with the "just cause" language. (Docket Entry No. 170). The Defendants provided copies of these Orders for each crew leader to distribute to their crews, id. ¶ 9; and sent each crew leader a "written memorandum which outlined the specifics of the last full paragraph of page 9 of the Court's Memorandum" of January 31, 2007." Id. at ¶ 10. The latter page instructed the Defendants to advise their crew leaders that the Court deems the action well-founded and will enforce the anti-retaliation provisions of the FLSA and the May 23rd Order. Ioup, however, did not provide copies of the documents that were actually circulated to crew leaders.

In opposition to Plaintiffs' motion for class certification in September 2007, Defendants filed 17 declarations that were executed by putative class member in March and April 2006 (before the May 23rd Order) (Docket Entry Nos. 231-2 to 231-18). Because the Court deferred the Plaintiffs' motion to certify, these 17 statements were not disclosed for nineteen months. Shortly after the statements were taken, Defendants withheld these statements, contending that any limitation on their contact with putative class members was unwarranted, because there was no evidence that they had engaged in potentially coercive communications with any class member. (Docket Entry No. 86 at pp. 3-4).

When the statements were disclosed, Plaintiffs filed a motion to strike and for sanctions, arguing that the statements had been concealed in violation of the discovery rules and asking the Court to investigate the circumstances under which these affidavits were taken. (Docket Entry No. 234). According to defense counsel, these statements

5

were taken in meetings between defense counsel and unrepresented putative class members. (Docket Entry No. 250-1).

At the October 22, 2997 hearing on Plaintiff's sanction motion, Defendants contended these ex parte meetings were appropriate, but these workers were not told that they were potential plaintiffs in this action. In its May 23rd Order the Court instructed the Defendants from the bench:

> [I]f anybody talks to a class member without an Order of the Court, there is going to be an ultimate sanction imposed. Does everybody understand that? And you'd better tell your supervisors. I've already issued one Order where that was ignored. But this one better be communicated, and I mean today.

(Docket Entry No. 318, Exhibit A, October 22, 2007 Transcript at p. 58).

In May 2008, Plaintiffs filed two declarations of opt-in-Plaintiffs describing the statements of Pedro Flores, SFSI's crew leader, to them about this action. Flores discouraged these Plaintiffs from joining this action, telling them that workers who joined the lawsuit were run out of the company and "kicked in the butts." Plaintiffs' Exhibit 1, Hernandez Declaration and Plaintiffs' Exhibit 2, Martinez Declaration. Flores told these workers that they would lose, and if they joined, they could be countersued by the company. Id. Flores' statements were made after the October 22nd Order, and near the end of the FLSA opt-in period. At the hearing, Plaintiffs and Martinez testified that Flores made such statements. (May 23, 2008 Transcript at pp. 59-61).

In his declaration, Flores denied these statements and described his written instructions from SFSI about the May 23rd Order and contempt orders. Plaintiffs' Exhibit 5. Haley Tester a SFSI controller, cited her awareness of these Orders. Plaintiffs' Exhibit 4. Flores also testified that he never "spoke with" Hernandez-Espina

6

"about the lawsuit," May 23, 2008 Transcript at p. 24, but responded to the following question: Q: Did you tell Oscar Hernandez-Espina to call the office if he had questions about the lawsuit? A: That's right." Id. at pp. 24, 30. Flores admitted that he told Oscar Hernandez-Espina and unspecified crew members to "go talk to the bosses" about this action. Id. at pp. 30-33. Flores explained that his "discussion" was after overhearing statements of Ancelmo-Martinez.

The Court deems Plaintiffs' witnesses credible, including Hernandez-Espina's testimony that he lacked any knowledge of the Court's protective order prior to his contact with Plaintiffs' counsel. May 23, 2008 Transcript at p. 62. Espina called Plaintiffs' counsel for information about this action and his right to join as a Plaintiff. Espina did not report Flores's statement because at the time, he did not know the statements violated the Court's Order. Id. Thus, Espina lacked any reason to question Flores's statement.

Defendants contend that, even if Flores violated the March 23rd Order, contempt should not be imposed because they adequately conveyed the Court's orders to their crew leaders. In February 2007, SFSI sent the order with a two-paragraph "transmittal memorandum" that was written only in English. Id. Plaintiffs' Exhibit 2, 4 and 5.

> The lawsuit against "Superior Forestry under the Fair Labor Standards Act and [t]he Migrant and Seasonal Agricultural Workers Protection Act has been deemed "well-founded" by the Court, and any retaliatory conduct by any Superior Forestry crew leader or agent against any H-2B worker will be addressed by the court and by Superior Forestry. Any such retaliation will not be tolerated. Additionally, <u>any communication with employees of Superior Forestry regarding any lawsuit related to Superior Forestry is strictly prohibited.</u>

7

Plaintiffs' Exhibit 4, Plaintiffs Exhibit 5 (emphasis added). The message to crew leaders was to include specific reference to the FLSA and the May 23rd Order. (Docket Entry No. 167 at p. 9).

In March 2007, after the Court's second order requiring distribution of the protective order and contempt order in Spanish as well as directing workers who believed that they had suffered retaliation to contact Plaintiffs' attorneys, Defendants sent out the required documents, together with a virtually identical "transmittal memorandum," that again was written only in English. (Plaintiffs' Exhibit 4 at ¶ 9 and Exhibit 3 attached thereto; and Plaintiffs' Exhibit 5 at ¶ 6, Exhibit 3 attached thereto). Each crew member was to acknowledge receipt of the Order and the top of this acknowledgment is: "We the undersigned have each received a copy of the 'Order totaling four pages." This document was written only in English, Plaintiffs' Exhibit 4, and Exhibit 2 attached thereto, but most of the Defendants' employees do not understand or read English. Plaintiffs' Exhibit 6 at p. 22. Flores testified that he did not remember receiving any verbal instructions about the Court's orders nor did Tester describe any. Id. at pp. 37-56.

The January 31st Order did not require Defendants to circulate anything in Spanish, but given the fact that the Defendants knew their crew leaders cannot read English, good faith would require a Spanish version be provided to ensure their understanding and compliance. Tester admitted that Defendants had adequate time to translate their two-paragraph cover memorandum into Spanish, but did not do so. May 23, 2008 Transcript at pp. 54-55. This omission explains the crew leaders' lack of understanding of the Court's Orders.

### Noncompliance with the October 22nd Direct

The Court's directive at the October 22nd hearing Order, required Defendants again to inform immediately their supervisors not to communicate with class members about this action. According to Tester, this memorandum was distributed in November, December, and January, when crew leaders returned from Mexico for the next tree planting season. Tester, who has had responsibility to communicate the Court's order to SFSI supervisors testified that she was unaware of the October 22nd directive. May 23, 2008 Transcript at p. 40. Flores received this document in December 2007, when he returned from Mexico for the 2008 tree planting season. May 23, 2008 Transcript at pp. 8-9, 48-49. Flores testified that he did not receive a telephone call or any other communication from the Defendant about the Court Order, although he can be reached by telephone in Mexico. Id. at p. 11. The Defendants' only action in response to the October 22nd directive to distribute the Order "immediately," was silence.

Defendants insist that their supervisors were in Mexico at the time of the October 22nd Order. Yet, the May 23rd Order explicitly provides that "the seasonal nature of Defendants' operations, and whether and to what extent an individual is currently engaged in seasonal activities, are not relevant to a determination of whether such individual is an employee or agent of Defendants." (Docket Entry No. 91, Order at ¶ 1). At the original contempt hearing, Ioup testified about efforts to deliver the SFSI memorandum to crew leaders who had already returned to Mexico. Plaintiffs Exhibit 6 at p. 29. In his affidavit on compliance, Ioup testified that Defendants had sent that order to crew leaders who were already back in Mexico and who had received the June 2006 memorandum describing the May 23rd Order.[1] The Court therefore concludes that

---

[1] Tester also testified that the orders were provided to "six crews from another company that perform work for [SFSI]." Docket Entry No. 170 ¶ 5. By contrast, Defendants did not communicate the October 22 Order to any of the crew leaders whom Tester described as "on loan" to Defendants at the time. (May 23,

9

Defendants clearly knew that their obligations included sending notices to Mexico, but the Defendants declined to do so.

## B. CONCLUSIONS OF LAW

"All orders and judgments of courts must be complied with promptly" as failure to do so can result in a finding of contempt. Maness v. Meyers, 419 U.S. 449, 458 (1975). The Court can "enforce compliance with their lawful orders," Shillitani v. United States, 384, 370 (1966). "A litigant may be held in civil contempt if his adversary shows by clear and convincing evidence that 'he volate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's orders.'" Glover v. Johnson, 138 F.3d 229 (6th Cir. 1998) (quoting NLRB v Cincinnati Bronze, Inc., 829 F.2d 585, 590 (1987).

Any ambiguities in the order must be resolved in favor of the alleged contemnor. Grace v. Center for Auto Safety, 72 F.3d 1236, 1241 (6th Cir. 1996). The order must be "read in light of the issues and the purpose for which the suit was bought," Cohn v. Kramer, 136 F.2d 293, 295-96 (6th Cir. 1943) (quoting Terminal R.R. Ass'n v. United Sates, 266 U.S. 17, 29 (1924), and evidence of noncompliance "must constitute a plain violation of the decree so read." Id.

If the movant in a contempt proceeding establishes a prima facie violation, the burden shifts to the respondent, who may defend with a showing of impossibility. Gover, 934 F.2d at 708 n.2. "[G]ood faith" is not a defense to civil contempt. Peppers v. Barry, 873 F.2d 967, 969 (6th Cir. 1989); Glover, 934 F.2d at 708 n.2. "[T]he test is not whether Defendants made a good faith effort at compliance, but whether 'the Defendants took all

---

2008 Transcript at pp. 53-54.

10

reasonable steps within their power to comply with the court's order.'" Gover, 934 F.2d at708 (quoting Peppers, 873 F.2d at 969) (emphasis added).

As a matter of fact and law, the May 23rd Order clearly "extended not only to the Defendants, but also to SFSI's employees and agents." (Docket Entry No. 91 Order, at p.1). By its express terms, the Order included "the Defendants, and their employees, agents" and "all persons who have been employees of the defendants and over whom defendants might continue to exercise influence or control." Id. As a matter of law,

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

Electric Workers Pension Trust Fund of Local Union # 58 , IBEW v. Gary's Electric Service Co., 340 F.3d 373, 380 (6th Cir. 2003) (quoting Wilson v. United States, 221 U.S. 361 (1911)).

As applied here, the Court finds that the Plaintiffs presented clear and convincing evidence that Pedro Flores made threatening and coercive statements to potential plaintiffs about this action, in violation of May 23rd protective order. (Docket Entry No. 91, Order at pp. 1-2). In his declaration and at the evidentiary hearing, Flores stated that he knew that he should not discuss this action with any of the workers on his crew. (Plaintiffs' Exhibit 5 at ¶ 3 and May 23, 2008 Transcript at p. 20). Although Hernandez-Espina and Ancelmo-Martinez are not members of the Rule 23 class as they were not employed prior to January 2006, these two Plaintiffs, who have subsequently opted-in, were at the time of Flores's statements, putative class members. The May 23rd Order

11

also prohibits communications with all "plaintiffs and putative class members: about the lawsuit.[2]  Id. at p. 2

As to Defendants' "substantial compliance" argument, in a civil contempt proceeding, "substantial compliance" is not a defense. Maness, 419 U.S. at 458. The Defendants are asserting in essence, a "good faith" defense. Glover, 934 F.2d at 708 n.2. To be sure, Peppers, requires proof that "the defendants took all reasonable steps within their power to comply with the court's order," 873 F.2d at 969, but the Defendants' efforts to inform their supervisors of the protective order, and the Court's additional warnings, were at best half-hearted. The record reflects that Defendants twice circulated a memorandum in a language that its employees and agents cannot read. Flores could not recall a single verbal instruction about the protective order. May 23, 2008 Transcript at p. 12. In a workforce of employees and agents with limited literacy in English, circulation of a memorandum in English is designed to ensure noncompliance. The Defendants were earlier held in contempt of the May 23rd Order. As to the October 22nd directive, Defendants waited as least a month to inform its employees, despite the Order's express requirement that Defendants do so "immediately." For compliance, the Defendants referred to a memorandum that they distributed, but did not offer into evidence. By failing to act reasonably, the Court concludes that the Defendants exposed class members to the likelihood of ongoing coercive communications from their agents, during the FLSA opt-in-period.

---

[2] The Court notes that, throughout the course of this limitation, the parties and the Court have used the terms "class" and "class members," unless specifically limited to refer to both the AWPA class and the FLSA class, and to members of each. In addition to the May 23rd Order, this usage is reflected in numerous pleadings and other orders, including the previous contempt opinion, that required the Defendants to advise their crew leaders that the Court would address retaliatory conduct directed against any "plaintiff or putative class member," and would do so "under the FLSA and the Court's May 23rd Order." See Oetinger v. First Residential Mortgage Network, 2008 U.S. Dist. LEXIS 41281 (W.D. Ky. May 23 2008).

12

As to the appropriate remedy, contempt sanctions should be fashioned "to compel obedience to a court order and compensate for injuries caused by noncompliance." Redken Laboratories, Inc. v. Levin, 843 F.2d 226, 229 (6th Cir. 1988) (quoting TWM Mfg. Co., Inc. v. Dura Corp, 722 "F.2d 1261, 1273 (6th Cir. 1983)). "The contemnor is not being punished for past behavior, but rather encouraged to shape its behavior to comply with the order based on the undesirability of suffering the sanction." United States v. Tennessee, 925 F.Supp. 1292, 1303 (W.D. Tenn. 1995).

Here, the most compelling need is to address injuries to the class and its putative members for the Defendants' violations of the Court's Orders. Given the Defendants' history on this issue, the Court finds a strong inference that their clear failure to comply with the October 22nd directive was to threaten workers with adverse job and other consequences if they joined this action. Putative class members are migrant guestworkers with temporary work status and limited education. These workers speak little English and know little about our legal system. If those workers are fired, they cannot lawfully seek work elsewhere or stay in the country and would have to return to poor economic conditions in Mexico. Plaintiffs' Exhibit Nos. 1 and 4.

In a FLSA collective action, the statute of limitations continues to run for each Plaintiff until her or she files written consent to join the action. 29 U.S.C. § 256(b); Baden-Winterwood v. Life Time Fitness, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007). Yet, this statute "establishes only a procedural limitations period." Ott v. Midland Ross, 523 F.2d 1367, 1370 (6th Cir. 1975), that is subject to equitable tolling, waiver and estoppel. Id. accord E.E.O.C v. Kentucky State Police Dep't., 80 F.3d 1086, 1095 (6th Cir. 1996) (the doctrine of equitable tolling is read into every federal statute). The

13

equitable tolling doctrine "permits courts to extend the statute of limitations on a case-by-cases basis to prevent inequity." Baden-Winterwood, 484 F.Supp.2d at 826 (citing Truitt v. Country of Wayne, 148 F.3d 644, 648 (6th Cir. 1998)).

The Sixth Circuit lists five factors to consider on equitable tolling: (1) whether the plaintiffs lack actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs remaining ignorant of their rights. Kentucky State Police, 80 F.3d at 1094 ; Baden-Winterwood, 484 F.Supp.2d at 826-27 (equitably tolling FLSA statute of limitations). This list is neither exclusive nor mandatory. Dixon v. Gonzalez, 481 F.3d 324, 331 (6th Cir. 2007); see Hasken, 234 F.Supp.2d at 692 (list not "comprehensive"). Equitable tolling has been found where three of the five factors were not satisfied. See Dixon, 481 F.3d at 331.

Here, the Court finds compelling circumstances for equitable tolling of the FLSA statute of limitations. Espina and Martinez, who were first employed in the 2007-2008 season, were not even included in the notice of mailing. (Docket Entry No. 323). As found earlier, given the limited education of members of the Plaintiffs' class, absent direct contact, there were not realistic means for these migrant guestworkers to become informed of their legal rights in the United States.

As to constructive notice, the Court adopts the analysis in Baden-Winterwood, 484 F.Supp.2d at 828 that it is unreasonable to charge impoverished foreign workers who do not speak or read English with notice of this country's employment laws. Id. ("If the

14

mere existence of a law suffices to impact constructive notice, an inquiry into the notice factors would be meaningless.")

As to the other factors, the Court finds the absence of prejudice to Defendants. "[T]he purpose of the statute of limitations is to prevent surprises 'through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" American Pipe & Construction v. Utah, 414 U.S. 538, 561 (1974) (Blackmun, J., concurring) (quoting Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49 (1944)). Defendants have had notice since this action was filed the Plaintiffs were pursuing a collective action. Thus, the tolling of the limitations period would not cause any cognizable prejudice to Defendants. See Baden-Winterwoods, 484 F.Supp.2d at 828-829.

The Court concludes that equitable tolling is the effective remedy for the Defendants' repeated contempt of the Court's orders that were intended to protect class members. As potential FLSA plaintiffs, these migrant workers likely did not have notice of their rights under the FLSA. Plaintiffs have submitted declarations that a large number, if not a majority of FLSA class members, are unlikely to have received actual notice of their legal rights and opportunity to join this lawsuit, notwithstanding the October 2007 notice to their last-known addresses in Mexico. (Docket Entry Nos. 323-324, Plaintiffs Exhibit 1 and Plaintiffs Exhibit 3).

This appropriate remedy reopens the deadline for class members to file their affirmative consents to join in this action. Equitable tolling is the logical remedy to Defendants' failure to respond effectively and to prevent potentially coercive communications by their agents with potential FLSA plaintiffs. See also Vana v.

15

Mallinckrodt Medical, Inc., 1995 U.S. App. LEXIS 35488 (6th Cir. Nov. 89, 1995) (the principle "that no man may take advantage of his own wrong" has "frequently been employed to bar reliance on statutes of limitations") (quoting Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231 (1959)). The Court tolls the limitation period to allow for another six months from the date of entry of the Order accompanying this Memorandum for putative class members to opt-in.

For corrective notice, Plaintiffs also request an opportunity for their counsel to conduct meetings with class members who are current or returning employees. The declarations filed by Plaintiffs evince the Defendants' prejudice toward this vulnerable population of workers and the necessity for the direct contact between counsel and putative class members to remedy the damage of the Defendants' repeated noncompliance and derisive statements about this action. (Docket Entry No. 324, Plaintiffs Exhibit1, Plaintiffs Exhibit 3). The circumstances here also demonstrate the ineffectiveness of written notice. The Court concludes that Plaintiffs' counsel meetings with putative class members and television and radio announcements in Mexico is necessary to ensure adequate notice and to correct the coercive effects of the prohibited statements by Defendants and their agents about this action

The Court accepts the judgment and experience of Plaintiffs' class counsel on the best notice to this class of migrant workers. Thus, the Court approves of the usage of radio and television notices at the Defendants' expense in the areas in which the Defendants' employees are hired or work. See e.g., Marroquin v. Canales, 236 F.R.D.E 257, 262 (D. Md. 2006). The defendants shall cooperate with class counsel in arranging and conducting meetings with each of Defendants' agricultural crews, on defendants'

16

properly during the workday. See <u>Hernandez v. Kovacevich "5" Farms</u>, Civ. F-04-5515 OW DLB (E.D. Calif., Docket Entry No. 324-2. The costs of notice are imposed upon the Defendants as the parties at fault. See e.g., <u>Veliz v. Cintas Corp</u>, 2004 U.S. Dist. LEXIS 24871 at *3 (N.D. Cal. Nov. 12, 2004); <u>Belt v. Emcare</u>, 299 F.Supp.2d 664, 669-70 (E.D. Tex. 2003). Defendants are jointly and severally for the costs of these notices as well as the time and expenses of class counsel in arranging and conducting the meetings with current and returning employees. The Court also awards Plaintiffs attorneys' fees and costs incurred in connection with this motion for contempt.

Within twenty (20) days from the date of entry of this Order, the Plaintiffs' counsel shall provide the Defendants with the broadcast notices, an estimate of the costs of the notices and a statement of Plaintiffs' attorney fees and costs associated with arranging and conducting the class member meetings as well as pursuing this motion.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of September, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge